[No. 8819.   Department Two.   November 15, 1910.]

## BANK OF CALIFORNIA, *Respondent*, v. UNION PACKING COMPANY et al., *Appellants*.[1]

GUARANTY—CONSTRUCTION—LIABILITY.   A written guaranty of advances to be made to a corporation covers a sum advanced upon the promissory note of the company, signed also by two others who were officers and stockholders of the company, the testimony showing that the money went to the credit of the company.

GUARANTY—NOTICE OF ACCEPTANCE—NECESSITY.   No notice of acceptance, other than the performance of the consideration, is essential to a written guaranty of advances to be made to a corporation by a bank whereby the guarantors unconditionally agree to pay, and request the bank to advance the money, and reciting that "this is a continuing guaranty and requires no notice to us and is to remain in force until canceled by notice in writing."

GUARANTY—CONSTRUCTION—LIABILITY—COSTS.   A guaranty of all advances to be made to a corporation covers attorney's fees provided for in the note given for the moneys advanced.

ACTIONS—PARTIES—JOINDER—NEGOTIABLE INSTRUMENTS — GUARANTORS.   The maker of a note and its guarantors under a written guaranty may be joined in one action.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered January 31, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Marshall K. Snell, F. S. Blattner,* and *L. B. da Ponte,* for appellants.

*Walter Loveday, Frank H. Kelley,* and *Raymond J. McMillan,* for respondent.

DUNBAR, J.—This is an action by respondent, plaintiff below, against the appellants on a contract of guaranty, which is as follows:

[1]Reported in 111 Pac. 573.

"Tacoma, Washington, March 13th, 1906.
"To the Bank of California,
      "Tacoma, Washington.
   "Dear Sirs:—We hereby jointly and severally authorize
and request you to advance to Union Packing Co. such moneys
as they may require from time to time, and for value received
we jointly and severally guarantee payment of whatever bal-
ance may remain due, not exceeding thirty-five thousand dol-
lars, in United States gold coin, with interest at the rate of
seven per cent per annum until paid, and upon failure to pay
the amount thereof due by Union Packing Co. we jointly and
severally promise to pay the same to you on demand.
   "This is intended as a continuing guarantee and requires
no notice to us, and is to remain in force until canceled by
notice in writing.

                   "Peter Hale, Chas. Hale, Knute Langlow,
                        Dirk Blaauw, Union Packing Co.,
                        Louis Langlow, Treas., Peter Iverson,
                   "By Louis Langlow, Attorney in Fact.
                        "Louis Langlow,
                        "O. J. Ekre."

   Respondent alleges that, in pursuance of and on the faith
of said contract of guaranty, on or about the 19th day of
September, 1906, it loaned to defendant Union Packing Com-
pany the sum of $8,000, evidenced by a promissory note.
The note was a joint and several note for $8,000, with interest
at the rate of seven per cent per annum until paid, signed by
Louis Langlow, O. J. Ekre, Union Packing Company, Louis
Langlow, treasurer.   Balance is claimed on this note against
all of the defendants, of $6,218.39, besides interest and attor-
ney's fee.   Motions and demurrers were filed and answers by
Hale and Blaauw to the effect, in substance, that the plaintiff
did not loan to the defendant Union Packing Company the
sum of $8,000, in pursuance and on the faith of an agreement
entered into between plaintiff and said defendants.   It is al-
leged that, if the plaintiff did loan such money, it was loaned
to the Union Packing Company, Louis Langlow, treasurer,
Louis Langlow, and O. J. Ekre, and that the same was not
loaned on the faith of any agreement had between plaintiff

and said defendants.   Other defendants defaulted, the trial proceeded, and resulted in a judgment against the appellants for the full amount asked for, and the case is brought here on appeal.

There are two propositions contended for by appellants: (1) That the offer to guarantee the indebtedness to be incurred by the Union Packing Company does not cover a promissory note executed by that company and others as their joint and several obligation; (2) that the judgment of the superior court is erroneous because respondent failed to allege and prove that appellants' offer to guarantee was accepted and notice thereof communicated to appellants.   The first proposition, it seems to us, is entirely without merit.   It is true that appellants cite the case of *Bell v. Norwood,* 7 La. 65, but that case simply held that, where A recommended B to the credit of C and C later made an advance to B and D as a firm, on the faith of the guaranty, the guarantor was not bound thereby.   But that is a different proposition from the one under consideration.   A person might well be willing to guarantee a payment to an individual whom he knew and with whom he had business relations, when he would not care to extend that guaranty, and did not intend to extend it, to a firm with which the person he intended to accommodate was connected.   In the case cited they were two distinct entities, and we think, unquestionably, that that decision was right. But in this case the promissory note in suit was evidence of the indebtedness of the Union Packing Company alone.   The record and proof show that all the parties who were parties to the guaranty were officers and stockholders of the Union Packing Company, and the testimony is to the effect that the money went to the credit of the Union Packing Company. This testimony is uncontradicted, for the appellants rested upon the testimony of the respondent and offered none of their own.   It was not necessary for Langlow and Ekre to sign the note, as they had already signed the guaranty; but the fact that they did sign the note certainly could not, under

any circumstances, detract from the effect of the guaranty, or affect it, deleteriously or otherwise.

On the second proposition, it is earnestly contended that the rule is that a guarantor of this character must have notice that the proposition made by him is accepted, and appellants cite many cases to sustain this contention. This, no doubt, is the general rule, because the doctrine of notice is based upon the theory that a mutual assent is necessary to the validity of a contract, and this lack of mutuality is discoverable where one party makes an offer to another the binding force and effect of which necessarily depends upon the consent of the other. It is nothing more than an announcement of the common expression that the minds of the parties must meet in order to constitute a contract, for it is elementary that one party alone cannot be bound. But where, for a consideration, a party obligates himself to do a particular thing, a different rule obtains and an obligation is created. This distinction between a guaranty and an offer to guarantee must not be lost sight of. It will be observed from a perusal of this guaranty that it is not an offer to do anything, but it is the actual doing of something. It is not an agreement to guarantee the payment of money if it is acceptable to the bank, but it is an unconditional agreement that it will pay, and a request to the bank to pay the money. The construction of this instrument has been placed upon it by the parties to it when they say: "This is intended as a continuing guaranty and requires no notice to us, and is to remain in force until canceled by notice in writing." There could scarcely be a plainer waiver of notice than is set forth here. Instead of the burden of notice being put directly or by implication upon the respondent, it is placed upon the signers of the guaranty when it is stated that it is to remain in force until canceled by notice in writing. That cancellation by notice in writing, of course, had reference to a cancellation to be made by the appellants, leaving nothing for the respondent to do.

The distinction between an agreement to guarantee and a

guaranty itself is plainly set forth in one of the citations of appellants, viz: Brandt, Suretyship & Guaranty (3d ed.), § 205 *et seq.*, which is quoted to sustain the general rule contended for, that notice should be given, and the reasons for the rule. The author, in closing the paragraph quoted, says:

"Where the contract is admitted to amount only to an offer to guaranty, it is universally held that in order to charge the party making the offer he must within a reasonable time be notified that his offer is accepted."

The plain implication there is that, where it is a guaranty itself, the other rule prevails; and the authorities cited by the author quoted sustain this distinction. Probably one of the most interesting cases adjudicated on this question is *Davis v. Wells*, 104 U. S. 159. There the guaranty was in the following language:

"For and in consideration of one dollar to us in hand paid by Wells, Fargo & Co. (the receipt of which is hereby acknowledged), we hereby guarantee unto them, the said Wells, Fargo & Co., unconditionally at all times, any indebtedness of Gordon & Co., a firm now doing business at Salt Lake City, Territory of Utah, to the extent of and not exceeding the sum of ten thousand dollars ($10,000) for any overdrafts now made, or that may hereafter be made at the bank of said Wells, Fargo & Co. This guaranty to be an open one, and to continue one at all times to the amount of ten thousand dollars, until revoked by us in writing."

It would be difficult to find any real distinction between this guaranty and the guaranty in the case at bar. The contention there was that notice had not been given of the acceptance of the guaranty, and that the guarantors should therefore be discharged. But the supreme court of the United States held that this was an unconditional guaranty, and that the guarantors should be bound. We think it not inappropriate to set forth a portion of the announcement of the court, in illustration of the principles governing this kind of a guaranty:

"The agreement to accept is a transaction between the guarantee and guarantor, and completes that mutual assent necessary to a valid contract between them. . . . And whenever a sufficient consideration of any description passes directly between them, it operates in the same manner and with like effect. It establishes a privity between them and creates an obligation. The rule in question proceeds upon the ground that the case in which it applies is an offer or a proposal on the part of the guarantor, which does not become effective and binding as an obligation until accepted by the party to whom it is made; that until then it is inchoate and incomplete, and may be withdrawn by the proposer. Frequently the only consideration contemplated is that the guarantee shall extend the credit and make the advances to the third person, for whose performance of his obligation, on that account, the guarantor undertakes. But a guaranty may well be for an existing debt, or it may be supported by some consideration distinct from the advance to the principal debtor, passing directly from the guarantee to the guarantor. In the case of the guaranty of an existing debt, such a consideration is necessary to support the undertaking as a binding obligation. In both these cases, no notice of assent, other than the performance of the consideration, is necessary to perfect the agreement; for, as Professor Langdell has pointed out in his Summary of the Law of Contracts (Langdell's Cases on Contracts, 987), 'though the acceptance of an offer and the performance of the consideration are different things, and though the former does not imply the latter, yet the latter does necessarily imply the former; and as the want of either is fatal to the promise, the question whether an offer has been accepted can never in strictness become material in those cases in which a consideration is necessary: and for all practical purposes it may be said that the offer is accepted in such cases by giving or performing the consideration.' If the guaranty is made at the request of the guarantee, it then becomes the answer of the guarantor to a proposal made to him, and its delivery to or for the use of the guarantee completes the communication between them and constitutes a contract."

In *Deering & Co. v. Mortell*, 21 S. D. 159, 110 N. W. 86, 16 L. R. A. (N. S.), at page 354, notes, the author says:

"When a guaranty is an absolute present guaranty, com-

plete in its terms, fixing the liability of the guarantor, and is not a conditional agreement, it takes effect as soon as acted upon; and notice of acceptance is not essential in order to render it binding. Thus, no notice of acceptance is necessary where the promise made is a conclusive guaranty, and not a mere overture to guarantee. *Jackson v. Yandes*, 7 Blackf. 526. . . . One who writes to a mercantile firm that he will be good for any little things of which the bearer may stand in need enters into a direct promise, rather than a collateral engagement; and no notice of acceptance is necessary. *Scott v. Myatt*, 24 Ala. 489, 60 Am. Dec. 485. A writing whereby those executing it authorize a lumber company to furnish a third person such building materials as he may wish, not exceeding a specified sum, and undertake, in the event of such person's failure to pay, to settle the account on ninety days' notice, constitutes a complete and absolute guaranty as soon as accepted and acted upon by the lumber company, without any notice of such acceptance being given to the defendants. *Platter v. Green*, 26 Kan. 252."

In fact, there are so many citations all holding this doctrine, many of the cases not having as strong indications of an unconditional guaranty as the one at bar, that further citation seems to be unnecessary. We think, unquestionably, under all authority, that the guarantors are held responsible without notice.

Neither do we think that there is any merit in the contention that attorney's fees could not be recovered. This was a suit upon a note against the maker and guarantors, who could all be joined in one action.

The judgment in all things will be affirmed.

Rudkin, C. J., Morris, Crow, and Chadwick, JJ., concur.