[No. 22740. Department Two. April 30, 1931.]

NORTH PACIFIC FINANCE CORPORATION, *Respondent,* v.
HOWELL-THOMPSON MOTOR COMPANY, *Appellant.*[1]

*Hass & Mote,* for appellant.

*Eggerman & Rosling* and *Arthur G. Cohen,* for respondent.

[1]Reported in 298 Pac. 424.

MILLARD, J.—On October 18, 1928, the defendant, a retail automobile dealer of Seattle, sold an automobile on conditional sale contract to B. T. Taylor. On the same date, that contract, on which was due from the vendee to the vendor $1,008.28 payable in eighteen monthly installments of $56 each, beginning November 18, 1928, was sold by the defendant to the plaintiff finance company, the assignment reading as follows:

"For a valuable consideration, the receipt of which is hereby acknowledged, we hereby sell, assign, transfer and set over unto North Pacific Finance Corporation, the within contract and the property therein described, and all moneys payable thereunder and warrant that we are the sole owners thereof and that the said property is free from all liens and encumbrances and hereby consent that the time of payment of any or all of said installments may be extended by holder of this contract, and hereby guarantee the payment of all moneys due or to become due under said contract, and also the full performance thereof by the vendee, and agree to indemnify the holder from all loss and costs hereunder and we hereby waive all notice and demand.

"In event of breach of any term hereof by vendee, we agree on demand to pay the whole amount thereof to holder, together with all costs incurred by holder and holder may retain this contract as collateral security for payment thereof by us. In case the holder forfeits the contract from the vendee and takes repossession of the property, it may either retain the property as full performance on our part, or at its election may sell the same and apply the proceeds to its costs and expenses and unpaid portion of this contract and we agree on demand to pay it all unpaid balances."

From March, 1927, to August, 1929, the plaintiff purchased more than two thousand automobile conditional sale contracts from the defendant, all of which were upon the same form and bore the same guaranty as the contract and guaranty involved in this action.

During that period of time, the plaintiff not having facilities for the sale of repossessed automobiles, by mutual understanding of the parties, all repossessed cars were delivered by the plaintiff to the defendant for sale. The defendant sold the automobiles and paid to the plaintiff the balance owing upon the particular contract, without reference to whether or not the sale produced more than the balance due on the contract.

. Five of the monthly installments were tardily paid by the vendee. On October 26, 1929, the vendee being seven payments in default, and the balance due on the contract amounting to $735, the plaintiff repossessed the automobile, after paying the storage charge thereon of $2.21. On October 30, 1929, the plaintiff, pursuant to the understanding of the parties and the practice theretofore followed, delivered the automobile to the defendant to sell, and demanded payment of the balance owing on the contract. On the ground that the plaintiff delayed too long in the repossessing of the car, the defendant refused to pay, whereupon plaintiff commenced this action to recover the balance due on the contract.

Defendant cross-complained for $798.13, alleging that one of its automobiles was stolen in August, 1929, and that plaintiff breached its contract to keep insurance against theft in force on that automobile during that period.

The trial of the cause to the court resulted in judgment in favor of the plaintiff on its complaint for a portion of the amount claimed to be due, and in favor of the plaintiff on defendant's cross-complaint. From that judgment, the defendant appeals. Plaintiff cross-appeals from that portion of the judgment failing to award to it all of the relief for which it prayed.

The contract of assignment provides:

"In case holder forfeits contract from vendee and takes repossession of property, it may either retain property as full performance on our part, or at its election may sell the same and apply proceeds to its costs and expenses and unpaid portion of this contract and we agree on demand to pay it all unpaid balances."

■ It is insisted that plaintiff, when it repossessed the automobile, had two remedies under the contract: Retain the car in full performance of the contract; or sell the automobile, apply the proceeds to the debt, and make demand on the defendant for the deficiency. Not having done either, contends defendant, plaintiff breached the contract, which is clear and explicit, and controls the rights of the plaintiff; that the court erred in admitting parol evidence of previous transactions whereby the defendant sold for the plaintiff certain automobiles repossessed by the latter, as a custom or usage cannot be set up to contradict the terms of an express contract "where a contract is full and clear on its face and is not ambiguous."

The terms of a contract, if unambiguous, are conclusive. A custom may not be shown if it is contrary to the clear terms of a contract. *Keen v. Swanson*, 129 Wash. 269, 224 Pac. 574.

"When a written contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed." 13 C. J. 525.

For more than two years prior to this controversy, the parties had more than two thousand automobile transactions. All of the numerous conditional sales contracts sold by defendant to the plaintiff were upon the same form, and bore the same guaranty, as the one involved in the case at bar. The provision that the plaintiff could elect to sell repossessed cars and apply

the proceeds to the unpaid portion of the contract, and then demand payment by defendant of any deficiency, was construed by the parties, during all of that period of time, as permitting the plaintiff to deliver the repossessed cars to the defendant to sell. Plaintiff had no means or facilities for selling used cars. Defendant could retail the cars—it was in that business—and more readily effect a resale, and also realize a higher price than could the plaintiff. By this, the defendant profited. The increased proceeds from the resale decreased the amount of the deficiency the defendant would be required to pay under the contract.

The terms of the contract were not superseded by the agreement of the parties that the sale by plaintiff was to be effected through the defendant as plaintiff's sales agent. The written contract is not contradicted by the agreement that resales of cars repossessed by the plaintiff were to be made by the defendant—that agreement is not at all repugnant or contrary to the terms of the written contract. Parol evidence was admissible to show the agreement of the parties as to the manner in which plaintiff would effect a sale of the repossessed cars. The numerous particular instances, for a period of more than two years, disclosed an established understanding by the parties as to the way in which resales would be handled. Whether A, B, or the defendant, acted as the agent in the sale of the cars for the plaintiff, the sale was made by the plaintiff as the principal.

Not until the trial of the cause did the defendant raise the question that the plaintiff had not complied with the provision quoted above. When the car was tendered to the defendant October 30, 1929, the defendant refused to accept the car, because the plaintiff had delayed too long in the repossession of same.

The defendant may not now claim that the car was tendered to it for sale, rather than sold by the respondent. That objection should have been made October 30, 1929. If made at that time, the plaintiff could have at once sold the car, applied the proceeds to the debt, and then demanded payment by the defendant of the balance due on the contract. An analogous authority is *Horwitz v. United States Fidelity & Guaranty Co.*, 95 Wash. 455, 164 Pac. 77. In that case, the insurance company disclaimed liability and refused payment, making no objection to the form or the sufficiency of the proof. Upon the trial of the cause, the insurance company contended that the form of proof was insufficient. The court held that the defendant was estopped to raise this question, saying:

"It is suggested that the refusal to pay may have been because of the insufficiency of the proof, but the announcement of a refusal to recognize liability for a loss after proofs have been furnished, without a specific objection on that ground, is a waiver of any informality or defects in the proofs."

Under its contract with the plaintiff, the defendant consented "that the time of payment of any or all of said installments may be extended by the holder of this contract."

A statement of the account was furnished by the plaintiff to the defendant each Monday during the existence of the contract. In July, plaintiff demanded that appellant find the car. Defendant refused to do this, and never at any time suggested that plaintiff was not diligent in enforcing its collection, or that the car should have been located and repossessed prior to the date (October 26, 1929) the car was repossessed by the plaintiff. Taylor made his last payment on the car July 30, 1929. The car was repossessed October 26,

1929, less than ninety days later, after plaintiff had made a diligent search for same.

There is no provision in the contract that the car must be repossessed within ninety days, or any period of time, after the account becomes delinquent, and there is an express stipulation for extension by plaintiff of time of payment of installments. Defendant also had knowledge of the difficulty plaintiff was having in collecting the installments. Defendant's reason for refusing to receive the car when tendered is without merit.

Defendant next insists that the court erred in allowing plaintiff an attorney's fee. That assignment is likewise without merit. It is true that the guaranty did not specifically mention attorney's fees. However, all of the provisions of the contract are guaranteed by the defendant, and the contract contains an express agreement to pay attorney's fees.

"Vendee agrees to pay in addition to taxable costs such sum as the court may adjudge reasonable as an attorney's fee in such suit or action."

We held in *Bank of California v. Union Packing Co.*, 60 Wash. 456, 111 Pac. 573, that a guarantee of all advances to be made to a corporation covers attorney's fees provided for in the note given for the money advanced.

In *Murphy v. Luthy Battery Co.*, 74 Cal. App. 68, 239 Pac. 341, an action against the guarantor of performance by a lessee, it was held that, though the guaranty did not mention attorney's fees, the guarantor was liable therefor, as the lease provided for payment of a reasonable attorney's fee in the event an action was brought to enforce the terms of the lease. The court said:

"The guarantors being liable for the rental due under the lease, they were also chargeable with attorneys' fees for the enforcement of its terms."

While the court found that the balance owing was $735, and that the plaintiff incurred storage bill of $2.21, the plaintiff was awarded recovery of only $569.21. The court also fixed the rate of interest from October 30, 1929, when the car was delivered to defendant, at eight per cent, when the parties by their contract stipulated payment of interest at the rate of twelve per cent.

The trial court erred. Plaintiff should have been awarded judgment for $737.21, with interest thereon from October 30, 1929, to date of judgment at twelve per cent, and the statutory rate thereafter. The judgment is modified accordingly.

Defendant's cross-complaint is based upon a breach of an alleged contract to keep insurance in force during the month of August, 1929, on another automobile, which the defendant lost through theft that month.

The court found, and the findings are amply sustained by the evidence, that the insurance policy was cancelled August 1, 1929, and defendant was advised thereof; that no agreement existed between plaintiff and defendant whereby said policy was to be continued in force, or a new policy of insurance written covering the automobile; that during the month of August, 1929, no insurance was in force upon the automobile; that plaintiff did not charge, and the defendant did not pay, any premium for insurance upon the automobile during the month of August, 1929.

The judgment is affirmed on defendant's appeal and modified on plaintiff's appeal, as recited above.

Tolman, C. J., Fullerton, Beeler, and Beals, JJ., concur.