[No. 28937. Department One. March 19, 1943.]

H. C. ROBEY et al., Respondents, v. WALTON LUMBER COMPANY, Defendant, CLYDE WALTON et al., Appellants.[1]

[1]Reported in 135 P. (2d) 95.

*Bogle, Bogle & Gates* and *Ray Dumett,* for appellants.

*Lincoln Tyler,* for respondents.

JEFFERS, J.—This is an appeal by defendants Clyde Walton and wife from a judgment of the superior

court for Snohomish county, made and entered August 15, 1942. The action was instituted by H. C. Robey and wife against Walton Lumber Company, a corporation, of which Clyde Walton was president, and Clyde Walton and wife, to recover the unpaid principal and interest on three first mortgage bonds issued by Walton Lumber Company on April 1, 1931.

By the provisions of the bonds, Walton Lumber Company acknowledged itself indebted and promised to pay to bearer the sum of one thousand dollars, without grace, on April 1, 1941, unless the bonds be sooner called for redemption. The bonds further provided that Walton Lumber Company should pay interest on the principal sum from April 1, 1931, until paid, at the rate of six and one-half per cent per annum, on the first day of July, the first day of October, the first day of January, and the first day of April, in each year.

Each bond further provides that it is one of an issue of coupon bonds, limited in the aggregate principal amount of one million two hundred fifty thousand dollars, all of the bonds being dated April 1, 1931, and maturing April 1, 1941; that the bonds were issued under and equally secured by a mortgage deed of trust of the same date, made by the company to the Everett Trust & Savings Bank, trustee, reference thereto being made for a particular description of the terms and conditions of the mortgage on which the bonds were issued and secured, and for a description of the security thereof and the rights of the bondholders in regard thereto.

Attached to each bond is the following guaranty, which was signed by Clyde Walton at the time the bonds here being considered were purchased by plaintiffs from Walton Lumber Company:

"The payment of the principal and interest of the within bond is, for a valuable consideration, guaranteed

by Clyde Walton individually, and said guaranty is endorsed hereon, duly executed by the said Clyde Walton under date of April 1, 1931.

### GUARANTY

"For and in consideration of the purchase at my request of the within bond from the maker thereof and of the sum of one dollar ($1.00) and other valuable consideration paid to the undersigned, I hereby absolutely and unconditionally guarantee the payment of the principal and interest of the within bond and agree to be bound by all of the terms and conditions thereof and of the mortgage deed of trust securing the same, and I hereby consent to any extension of the time of payment and waive notice of the acceptance of this guaranty and demand and notice of nonpayment of principal or any installment of interest.

"This guaranty is made for the benefit of each legal holder of this bond and of the coupons attached thereto and by each transfer of this bond or any of said coupons it shall pass to and inure to the benefit of the transferee without notice of the acceptance of this guaranty."

It is alleged in the complaint that the principal of the bonds became due and payable April 1, 1941, and that no part of such principal has been paid, although payment has been demanded; that the forty interest coupons attached to each bond became due and payable at certain quarterly periods, no part of which has been paid, except the sum of $151.25; that the payment of the principal and interest of the bonds was absolutely and unconditionally guaranteed by defendant Clyde Walton. Plaintiffs then ask for a money judgment only against defendants.

Defendants by their answer admit the issuance of the bonds above referred to, the purchase of the three bonds by plaintiffs on or about April 1, 1931, and that Clyde Walton guaranteed the payment of the bonds. As an affirmative defense, defendants allege that the bonds held by plaintiffs were issued subject to the

terms and conditions of the mortgage deed of trust referred to in the bonds, and that neither these bonds, nor the guaranty, nor the coupons, are in default as to the obligations, terms or conditions of the mortgage deed of trust, bonds, coupons, or guaranty.

By way of a second affirmative defense, defendants allege that the trust deed provides for the sole and exclusive remedies in the event of default in any of the obligations, terms, or conditions of the bonds, coupons, or guaranty, and that plaintiffs have not pursued such remedies and are without capacity to bring suit for any of the alleged defaults in the obligations, terms, or conditions of such bonds, coupons, or guaranty.

Plaintiffs, by their reply, deny the affirmative matters set up in defendants' answer.

The cause came on for hearing before the court, which thereafter made and entered findings of fact, conclusions of law, and judgment. The judgment dismissed Walton Lumber Company from the case, with costs, and gave judgment to plaintiffs, against Clyde Walton and against the community composed of Clyde Walton and wife, for the sum of $4,764.57, together with costs and interest on the judgment at the rate of six and one-half per cent per annum until paid. Clyde Walton and wife have appealed from this judgment.

In view of the fact that respondents have not cross-appealed, and because Clyde Walton and wife have claimed error only on the entry of finding of fact No. 6 and conclusion of law No. 3, which present only a legal question, we set out the findings made and entered by the trial court, in so far as material hereto, as the facts in this case:

"Findings of Fact

I

"That at all times herein mentioned the plaintiffs were and still are husband and wife, residents of the city of Seattle, King county, state of Washington.

II

"That at all times herein mentioned the defendant Walton Lumber Company was and still is a corporation organized and existing under and by virtue of the laws of the state of Washington, with its principal place of business in the city of Everett, Snohomish county, Washington.

III

"That on or about April 1, 1931 the defendant Walton Lumber Company issued its first mortgage bonds in the principal sum of $1,250,000, payable on April 1, 1941, said bonds being issued under and pursuant to a certain mortgage deed of trust, naming the Everett Trust and Savings Bank of Everett, Washington, as trustee, which mortgage deed of trust was duly recorded in the office of the county auditor of Snohomish county, Washington, in volume 177 of Mortgages on page 15, the same being duly recorded and filed as both a real estate mortgage and a chattel mortgage. That a certified copy of said mortgage deed of trust has been introduced in evidence herein as defendants' exhibit 7; that each of said bonds (as shown by plaintiffs' exhibits A, B and C herein) specifically refers to said mortgage deed of trust.

IV

"That on or about April 1, 1931, the plaintiffs purchased from the defendant Walton Lumber Company three of said bonds, towit: Bonds Nos. M447, M448 and M449, each in the principal sum of $1,000, plus interest at the rate of $6\frac{1}{2}\%$ per annum as evidenced by forty interest coupons, attached to each of said bonds, in the sum of $16.25 each. That said three bonds have been introduced in evidence herein as plaintiffs' exhibits A, B and C. That said bonds were duly authenticated by the Everett Trust and Savings Bank, as trustee under said mortgage deed of trust, as shown by plaintiffs' exhibits A, B and C herein. That, although

the plaintiffs have made demand for the payment of said bonds and coupons, no payment has been made except the sum of $151.25, paid by way of interest upon each of said bonds.

## V

"That after the issuance and sale to plaintiffs of said three bonds, all of the holders of the bonds issued under and pursuant to said mortgage deed of trust, with the exception of the plaintiffs and one other bondholder, authorized said trustee to enter into a moratorium agreement with the defendant Walton Lumber Company by which certain rights under said bonds and mortgage deed of trust, were waived. That accordingly said trustee entered into said moratorium agreement in writing, and a copy of said moratorium agreement has been introduced in evidence herein as defendants' exhibit 1. That the bondholders who authorized said trustee to execute said moratorium agreement held and still hold a majority in amount of said bonds. That at no time have any of said bondholders, holding 25% or more in amount of said bonds, demanded any action by said trustee to enforce payment of said bonds or coupons under the provisions of said mortgage deed of trust.

## VI

"That the payment of the principal and interest of each of said bonds was absolutely and unconditionally guaranteed in writing by the defendant Clyde Walton, said written guaranty being attached to each of said bonds when issued and sold to the plaintiffs as shown by plaintiffs' exhibits A, B and C herein.

## VIII [sic]

"That the plaintiffs are the owners and holders of said bonds Nos. M447, M448 and M449, and the interest coupons attached thereto; that the amount of principal due and unpaid upon each of said bonds is the sum of $1,000.00, and that the amount of interest at the rate of 6½% per annum due and unpaid on each of said bonds to date hereof is the sum of $588.19; that the total amount, including both principal and interest, due and unpaid to date hereof upon said bonds Nos. M447, M448 and M449 is the sum of $4,764.57.

## "Conclusions of Law

### I

"That the reference contained in said bonds (plaintiffs' exhibits A, B and C herein) to said mortgage deed of trust (defendants' exhibit 7 herein) is sufficient to incorporate by reference in said bonds, the terms and provisions of said mortgage deed of trust, and is sufficient to require the reading of said mortgage deed of trust in connection with said bonds in order to ascertain the entire contract between the plaintiffs and the defendant Walton Lumber Company.

### II

"That the provisions of said mortgage deed of trust prohibit the institution and maintenance of this action by the plaintiffs against the defendant Walton Lumber Company, and prohibit any recovery by plaintiffs as against the defendant Walton Lumber Company in this action; and that the defendant Walton Lumber Company is entitled to judgment herein dismissing this cause as to said defendant and awarding said defendant its costs and disbursements to be taxed herein against the plaintiffs.

### III

"That the plaintiffs are entitled to judgment, however, against the defendant Clyde Walton and against the marital community composed of the defendant Clyde Walton and Nora E. Walton, his wife, in the sum of $4,764.57, together with plaintiffs' costs and disbursements herein to be taxed, and that said judgment bear interest at the rate of $6\frac{1}{2}\%$ per annum until paid."

As heretofore stated, appellants, Walton and wife, base their claim of error on the making and entry of finding of fact No. 6, conclusion of law No. 3, and judgment against appellants.

The trial court, in dismissing Walton Lumber Company, was of the opinion, as appears from the memorandum decision, that respondents' action against the lumber company must fail because of respondents' inability to secure the cooperation of the trustee and

the necessary number of bondholders; in other words, that, before respondents may bring an action on their bonds against the lumber company, they must have complied with the following conditions in article 29 of the trust deed: (1) The giving of written notice to the trustee by the holders of not less than twenty-five per cent in amount of the bonds outstanding and unpaid, such notice requesting the trustee to take action, or exercise some power granted to the trustee in the trust deed; (2) the furnishing by such bond-holders to the trustee of adequate indemnity against all costs and expenses to which the trustee in its opinion might be subjected by taking the requested action; (3) the elapsing of a period of thirty days from and after the receipt by the trustee of such notice, without action by the trustee. It is admitted that respondents did not comply with the above-mentioned provisions.

The character of the actions referred to in article 29 is shown by the following provision:

"It is hereby declared and agreed, as a condition upon which each holder or holders of all or any of said bonds and of all or any of the coupons for the interest on said bonds receives and holds the same, that no holder or holders of any of said bonds or coupons shall have the right to institute any proceeding in law or equity, of whatever character or kind, *for the fore-closure of this indenture, or the execution of the trusts hereof, or for the appointment of a receiver, or for any other remedy under this instrument or for enforcing the lien hereby created,*" (Italics ours.)

without first doing the things above specified.

The trial court was further of the opinion, as a reason for dismissing Walton Lumber Company, that it appeared from a reading of all the provisions of the trust deed that no individual bondholder should take any action which would prejudice the security of the other bondholders. The trial court stated:

"It will be noticed that any deficiency judgment is to be for the equal benefit of the bondholders (page 55 and 56 of the mortgage deed of trust). To allow plaintiff to recover in this action and seek to impress a lien upon any property of the Walton Lumber Company or levy against any property of the Walton Lumber Company not covered by the mortgage deed of trust [there was property of the lumber company not covered by the mortgage] would certainly prejudice the right of the other bondholders in the collection upon any deficiency judgment."

We desire at this time to call attention to article 28 of the trust deed, at page 56, which provides, in part, as follows:

"Anything in this indenture contained to the contrary notwithstanding, the holders of a majority in amount of the bonds hereby secured and then outstanding shall from time to time have the right to direct and control the method and place of conducting any proceedings taken hereunder *for the sale of the property covered by this instrument, or for the foreclosure of this indenture, or for the appointment of a receiver, or for the purpose of taking any other proceeding hereunder.*" (Italics ours.)

On May 16, 1935, under an agreement made and entered into between the trustee and the lumber company, which agreement was approved by Clyde Walton, as guarantor, and agreed to by a majority of the bondholders, but which was not agreed to by respondents, a moratorium was declared on the right of the trustee to bring an action for the foreclosure of the mortgage, or take any proceedings to sell any of the mortgaged property, under any provisions of sale conferred by the trust mortgage. This agreement was modified and supplemented by another agreement dated May 18, 1936. The reasons for this moratorium, as set out in both agreements, were as follows:

"WHEREAS, the mortgagor has become in default in the performance of its obligations under said trust mortgage in, that it is delinquent in the payment of interest and taxes, in sinking fund requirements, and in other respects. Its financial affairs have become so involved that there is in sight no prospect whatsoever of its being able to make good said defaults, or otherwise meet its obligations under said trust mortgage or the bonds secured thereby."

This is the moratorium referred to in the findings of fact, and was to continue so long as a logging contract which the trustee, by the agreement of May 18, 1936, was authorized to enter into, should be in force and effect.

It may be further stated that, under the trust mortgage, each and all of the bonds became payable on April 1, 1941, and each of them was to bear interest as hereinbefore stated. A form of the bond is set out in the mortgage.

We find no provision in either the bonds or trust mortgage which gives to either the trustee or a majority of the bondholders the right to change the date of maturity of these bonds or the interest coupons attached, or the amount due on the bonds and interest coupons.

We make this statement relative to a moratorium, for the reason that some argument is made by appellants that, because of the moratorium, which was agreed to by a majority of the bondholders, there was no default on the part of Walton Lumber Company at the time this action was commenced. We are satisfied such moratorium, not agreed to or participated in by respondents, would not of itself prevent respondents from bringing this action on the guaranty.

The trial court, in holding that this action could not be maintained against the lumber company, based its decision very largely on the case of *Collier v. Miller*

*Cedar Lbr. Co.,* 13 Wn. (2d) 201, 124 P. (2d) 555. The cited case does not involve the question of guaranty, but was a suit on four promissory notes. The defendant admitted liability, and that the notes were in default, but pleaded that the sole right of action upon them rested in the trustee, under the terms and conditions of the notes and what is called a "mortgage and trust agreement."

In so far as this appeal is concerned, we are confronted only with the question of whether or not respondents are entitled to recover on the guaranty of Clyde Walton. Appellants contend that, the trial court having held there could be no recovery against Walton Lumber Company upon the primary obligation, there could be no recovery against the guarantor on his secondary obligation, arguing that, inasmuch as the court had determined that the terms and conditions of the trust mortgage were by reference incorporated in the bonds and coupons, and became binding on the bondholders with the same force and effect as though written into those instruments, it necessarily follows that the terms of the trust mortgage were likewise incorporated in the guaranty with the same force and effect as though written into the guaranty. Appellants further argue that a bondholder, in order to institute an action against the guarantor, was required to perform, or secure the performance of, the same conditions precedent that must be performed in order to institute an action against the principal obligor.

The trial court gave the following reasons for allowing a recovery against the guarantor:

"Defendants [appellants here] contend that, inasmuch as a contract of guaranty is collateral to another obligation, if the primary or principal obligation does not exist, there cannot be a contract of guaranty which is enforceable. This, of course, is the rule, but there

is a principal obligation in this case, and such obligation is due. Plaintiff [respondent here] fails in his action against the principal obligor simply because of his inability to secure the cooperation of the trustee and the necessary number of bondholders in order to maintain an action. The Walton Lumber Company owes plaintiffs upon the principal obligation, but plaintiffs simply cannot avail themselves of the remedy they have sought in this action. See *Austin v. Wright,* 156 Wash. 24. I am also of the opinion that the defense which defendant Walton Lumber Company has made in this case is personal to the Walton Lumber Company and is not available to the guarantor. See 24 Am. Jur. 902.

"It will be noticed that *Mr. Walton has absolutely and unconditionally guaranteed the payment of the principal and interest of the bonds.* I do not see how words could more directly give rise to an obligation to pay the bond upon its maturity. None of the reasons for denying recovery at this time against the Walton Lumber Company have any relation to the guarantor's liability. It is true that Mr. Walton agrees to be bound by the terms and the conditions of the bond and of the mortgage deed of trust, but Mr. Walton's agreement to be bound by the mortgage deed of trust is limited to those provisions which are favorable to the bondholder, such as acceleration clauses, etc.

"It may be said that plaintiffs' right to recover on the guaranty is affected by the moratorium agreements between the trustee, the Walton Lumber Company and the other bondholders. I have looked in vain for anything in the mortgage deed of trust which could in any way make such moratorium agreements binding upon plaintiffs. I find no power in the holders of a majority of the bonds to reduce the debt or change the date of maturity of the bonds. The power is limited to the remedies to be pursued in making collection."

It will be noticed that the trial court did not deny recovery against Walton Lumber Company because there was no default on its part in the payment of

principal and interest on the bonds and coupons, but because of respondents' inability to secure the cooperation of the trustee and the necessary number of bondholders, as required by the trust mortgage.

Before discussing the particular question before us, it might be well to have in mind some of the general principles relative to a contract of guaranty.

"The contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily. An approved definition of 'guaranty' is 'a promise to answer for the debt, default, or miscarriage of another person.'" 24 Am. Jur. 873-4, § 2.

See, also, 28 C. J. 886, § 1, and 12 R. C. L. 1053, § 1.

"A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor. If a primary or principal obligation does not exist, there cannot be a contract of guaranty. 'To constitute a guaranty, there must be a principal debtor or obligor.' 'Without a principal debt there can be no guaranty.'

"The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral. The fact that both contracts are written on the same paper or instrument does not affect the independence or separateness of the one from the other." 24 Am. Jur. 875-6, § 4.

"The contract of guaranty may be absolute or it may be conditional. An absolute guaranty is an unconditional undertaking on the part of the guarantor that the debtor will pay the debt or perform the obli-

gation. A conditional guaranty contemplates, as a condition to liability on the part of the guarantor, the happening of some contingent event *other than the default of the principal debtor* or the performance of some act on the part of the obligee. Where the guaranty is conditional, the obligation of the guarantor may not be enforced unless the event has occurred or the act has been performed. . . . (Italics ours.)

"A guaranty of the payment of an obligation, without words of limitation or condition, is construed as an absolute or unconditional guaranty." 24 Am. Jur. 885, § 16.

In the case of *Sherman, Clay & Co. v. Turner,* 164 Wash. 257, 2 P. (2d) 688, we approved the following definition of an absolute guaranty, found in 28 C. J. 895:

" 'An absolute guaranty is one by which the guarantor unconditionally promises payment or performance of the principal contract *on default of the principal debtor or obligor,* the most usual form of an absolute guaranty being that of payment. . . . A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor.' " (Italics ours.)

In the cited case, we also quoted from Randolph on Commercial Paper, § 850, p. 519, as follows:

" 'A guaranty may be *absolute,* that is, for the payment of the bill or note; or *conditional,* that is, a guaranty that is collectible by due diligence. One who *guarantees payment* becomes absolutely liable on any default of payment by his principal.' "

See, also, the case of *Bank of California v. Union Packing Co.,* 60 Wash. 456, 111 Pac. 573. While the cited case deals with the question of notice, it is of value herein, in that it shows the trend of the decisions of this court relative to absolute guaranties. The opinion quotes from the note to the case of *Deering &*

*Co. v. Mortell,* 21 S. D. 159, 110 N. W. 86, found in 16 L. R. A. (N.S.) at p. 354, as follows:

"When a guaranty is an absolute present guaranty, complete in its terms, fixing the liability of the guarantor, and is not a conditional agreement, it takes effect as soon as acted upon; and notice of acceptance is not essential in order to render it binding. . . ."

██ Stearns, Laws of Suretyship (4th ed.), states that it is not necessary to first pursue and exhaust the principal before proceeding against the guarantor, in cases where the guaranty is absolute; that, where the time and amount of the payments are fixed, the liability of the guarantor depends upon no other condition than the nonpayment by the maker.

We also find in 28 C. J. 895-6, under the general heading, "Kinds of Guaranties," this statement:

"In order to bind the guarantor under an absolute guaranty it is not necessary that there should be notice of acceptance of the guaranty, or notice of the default of the principal, or that any steps should be taken to enforce the contract guaranteed against the principal, and the fact that these acts are not necessary in order to bind the guarantor distinguishes an absolute guaranty from a conditional guaranty."

All of the authorities seem to hold that, where the guaranty is absolute, and provides for the payment of a specified sum or sums at fixed periods, liability of the guarantor becomes fixed on default of the principal.

We are satisfied that the guaranty here in question is an absolute and unconditional one.

In the instant case, the guarantor, by express words, absolutely and unconditionally guaranteed the payment of the principal and interest of the bonds. The time of payment and the amount due were definitely fixed by the bonds themselves and by the trust mortgage.

■ We have recognized that there are exceptions to the general rule that the liability of the principal debtor measures and limits the liability of the guarantor. See *Castle & Co. v. Public Service Underwriters,* 198 Wash. 576, 89 P. (2d) 506, from which we quote:

"The rule that liability of the principal debtor measures and limits the liability of the surety is subject to several important exceptions. One is that a guaranty of an existing contract may stand by itself although the obligation guaranteed is unenforceable, provided that it can fairly be said that such was the intention of the parties. *Backus v. Feeks,* 71 Wash. 508, 129 Pac. 86, Ann. Cas. 1914C, 553; 1 Brandt, Suretyship Guaranty (3d ed.), 104, § 44. That it was the intention of the parties that P. S. U. should be liable upon its guaranty agreement, regardless of any legal defect in the sales contract, cannot be gainsaid. Certainly, the parties did not contemplate that P. S. U. could escape liability merely because a door of escape might be open to Consolidated [principal obligor]. Having guaranteed performance by the principal debtor of a promise that the debtor made and for which the debtor has received consideration, and having made its intention in that respect clear and plain, the guarantor is now bound by its agreement."

■ In the instant case, there was clearly a default on the part of the principal obligor in the payment of principal and interest of the bonds in question, and the fact that respondents were unable to, or did not, procure the necessary cooperation of the trustee and a sufficient number of bondholders to authorize an action against the principal obligor does not in any manner show the principal obligor was not in default. In fact, the moratorium agreements introduced herein show that Walton Lumber Company was in default in 1935 and 1936, and appellants do not deny that pay-

ments have not been made according to the terms of the bonds and interest coupons.

We are satisfied, as stated, that, at the time this action was brought, the principal obligor was in default in the payment of principal and interest due on the bonds, and it appearing that Clyde Walton had unconditionally guaranteed the payment of the principal and interest on the bonds when due, these respondents are not prohibited from bringing this action on the guaranty, regardless of their inability to proceed against the principal obligor. In other words, it seems to us that, under the plain terms of the guaranty, the bondholders are given a remedy in addition to those provided in the trust mortgage, and that the guaranty does not contemplate that, before a bondholder may bring an action on the guaranty, he must comply with the conditions of, and pursue the remedies provided in, the trust mortgage, but rather that such conditions must be met and remedies pursued only in case the bondholder seeks to claim some of the benefits given by the trust mortgage or attempts to pursue some remedy which would result in detriment to the other bondholders, under rights given by the mortgage.

Appellants cite several cases to sustain their contention hereinbefore stated. In the case of *Kreizelman v. Stevens,* 311 Ill. App. 161, 35 N. E. (2d) 532, suit was brought on a guaranty of two special assessment vouchers issued by the village of LaGrange Park, Illinois. These vouchers specifically stated:

"Both principal and interest of this voucher are payable when collected at the office of the Treasurer of the Village of LaGrange Park, Illinois, solely out of the portion of taxes collected pursuant to levy of the said Village for the purpose of discharging the first installment of said special assessment, on or before December 31, 1930."

The opinion states:

"It is conceded that the principal obligor, the Village of LaGrange Park, was not in default in the payment of the vouchers since it fully complied with its obligations to pay same 'from the funds realized by the Village of LaGrange Park, from the collection of the first installment of the special assessment levied and confirmed by the County Court of Cook County, Illinois . . . but out of no other tax or fund.' "

In the cited case, the plaintiff contended that, where the guarantor, by his contract of guaranty, assumes a greater obligation than that of his principal, he will be held to the terms thereof irrespective of whether the principal is liable. The opinion continues:

"In every case cited by plaintiff in support of this contention the principal debtor had defaulted before the guarantor had been called upon to comply with his guaranty and it is therefore unnecessary to discuss such cases since *it is conceded that upon the default of the principal obligor the guarantor may be held liable irrespective of the liability of the principal debtor.*" (Italics ours.)

The decision in the cited case is based upon the fact that, because of the provision in the vouchers, there was no default on the part of the principal obligor, but it also pointed out the very principle recognized and relied upon by the trial court in the instant case to allow a recovery on the guaranty.

The next case cited by appellants is *Pavlantos v. Garoufalis*, 89 F. (2d) 203. In that case, it likewise appeared that the principal debtor was not in default in his payments under a decree of the court. The same general contention was made relative to the liability of the guarantor as was made in the case of *Kreizelman v. Stevens, supra.* The opinion has this to say about an absolute guaranty:

"An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor."

The opinion concludes:

"The order modifying the decree extinguished the payments and relieved Bruskas of further liability for them. That ended the liability of the guarantor [Bruskas] for them."

It is true in the cited case that the court stated the decree and the guaranty should be considered together, in ascertaining and giving effect to the mutual intention of the parties, but, as stated, the decision was based upon the fact that there was no default on the part of the principal obligor in his payments. Neither this case nor the preceding one purports to hold that, had there been a default on the part of the principal obligor, an action on the guaranty would not have been sustained.

While the facts in the case of *Levine v. Lehigh Valley R. Co.*, 19 N. Y. S. (2d) 440, the next case cited by appellants, are so briefly stated that it is impossible to get a very clear idea of them, it is apparent from the opinion and syllabus that the action was one against the guarantor of a note which was one of an issue secured by a trust mortgage. It also appears that the plaintiff relied on the provisions of the trust mortgage to establish a default, and, having so relied, he was required to comply with the other provisions of the trust deed defining the remedy for such default.

Nor do we think it can be said there is anything unjust or unfair to the other bondholders in permitting respondents to bring this action on the guaranty. By so doing, respondents are in no way affecting the

262

security referred to in the mortgage, or any other property of the principal debtor.

The judgment is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and BLAKE, JJ., concur.

