

2015 MAY 11 AM 10: 47

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LARASCO, INC., a Washington corporation,<br><br>                    Respondent,<br><br>          v.<br><br>DEL NORTE, LLC, a Washington limited liability company,<br><br>                  Defendant,<br><br>          and<br><br>SR DEVELOPMENT, LLC, a Washington limited liability company; and ELLIOTT J. SEVERSON,<br><br>                Appellants,<br><br>          and<br><br>MARK ROBERTS; and EDWARD ROBERTS;<br><br>               Defendants. | No. 71158-0-I<br>(consolidated w/71450-3-I)<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: May 11, 2015 |

BECKER, J. — This appeal is from a judgment and award of attorney fees entered after a bench trial. The dispute involved a million dollar loan made by

Larasco Inc. to appellant SR Development LLC.[1] We affirm the judgment, but reverse the award of attorney fees insofar as it bound appellant Elliott Severson as a guarantor.

Severson, Mark Roberts, and Edward Roberts owned SR Development at the time Larasco loaned the money. The Roberts and Severson signed a promissory note in their capacities as members of SR Development. Under the terms of the note, SR Development was obligated to make monthly payments of $12,000.00 to Larasco for one year beginning on May 1, 2008. A final payment of $961,875.64 was to be paid on May 1, 2009. If SR Development defaulted, Larasco was entitled to receive 12 percent interest on the note.

Severson and the Roberts also signed an "Addendum to Promissory Note (Additional Security)" in their individual capacities. This document will be referred to as the "Security Addendum." In it, the Roberts and Severson agreed to secure the note with their interests in a piece of property known as the Lakemont Building. The Lakemont Building was a commercial real estate project the Roberts and Severson jointly owned and controlled through I-90 Lakemont LLC. The Roberts and Severson agreed that in the event of a default on the promissory note, "Holder" (i.e. Larasco) in its sole discretion would have the right

---

[1] The trial court's findings of fact and conclusions of law explaining the basis for its judgment refer to three promissory notes. Each note resulted in litigation. The first note relates to Larasco's million dollar loan to SR Development. The second note is related to a $705,476 loan made by Larasco to Del Norte LLC. The third note was created after SR Development made an advanced payment on the million dollar loan. This appeal addresses issues related to the first and third notes. The Del Norte loan is not at issue in this appeal.

to require them to "execute and properly record a Deed of Trust" to the Lakemont Building.

The third document in connection with the loan was the "Addendum to Promissory Note (Unconditional Guarantee)" signed by the Roberts and Severson in their individual capacities.

Larasco drafted the documents to close the deal. All of the documents were simultaneously executed.

In September 2008, SR Development made a $500,000.00 advance payment to Larasco on the loan. SR Development issued a second promissory note to Larasco for $481,358.55. The trial court found this was to reflect the amount of principal remaining after the $500,000.00 payment. The second note included most of the terms of the original loan, except that the parties agreed to extend the final payment date until September 2013.

Soon, SR Development asked Larasco to modify the terms of the loan once more because it was experiencing financial difficulties. In May 2009, Larasco agreed to lower the interest rate to five percent and lower the monthly payments. The parties executed an addendum reflecting that modification.

The loan went into default in March 2012. No further payments were made.

In August 2012, Larasco notified Severson and the Roberts that Larasco was exercising its right under the Security Addendum to require them to execute and record a deed of trust on the Lakemont Building. When this did not happen, Larasco recorded a lis pendens and initiated litigation.

3

Larasco's first amended complaint requested a judgment against SR Development for all amounts due under the notes related to the loan, as amended; a judgment against Severson and the Roberts for all amounts due under the guarantee; declaratory relief confirming that Larasco held a valid security interest in the Lakemont Building; and attorney fees. Larasco also requested an order of specific performance requiring the defendants to execute and record a deed of trust on the Lakemont Building.

Before trial, the Roberts stipulated to a settlement with Larasco. On July 19, 2013, the trial court entered an order reflecting the terms of the Roberts-Larasco stipulation. Under that order, Larasco became entitled to a judgment against the Roberts, as well as a capped amount of attorney fees.

In October 2013, Larasco went to trial against Severson. The trial court entered a judgment on the note for $559,056.21, jointly and severally against defendants SR Development, the Roberts, and Severson. This amount included accrued interest. The trial court also made an award against SR Development, Severson, and the Roberts, jointly and severally, for the $177,050.93 in attorney fees and costs that Larasco incurred between May 4, 2012, and July 19, 2013. The remaining $124,492.09 in attorney fees and costs that Larasco incurred between July 20, 2013, and the entry of judgment on November 4, 2013, were to be paid by Severson.

Severson appeals.

## SPECIFIC PERFORMANCE OF THE SECURITY ADDENDUM WAS PROPERLY ORDERED

The trial court ordered Severson to convey and record a deed of trust on the Lakemont Building in favor of Larasco under the terms of the Security Addendum. Severson contends specific performance was improper because the Security Addendum did not specify the material terms to be included in the deed of trust.

Specific performance should be granted only if an agreement can be enforced without judicially-supplied material terms. Setterlund v. Firestone, 104 Wn.2d 24, 25-26, 700 P.2d 745 (1985); Hubbell v. Ward, 40 Wn.2d 779, 781-82, 246 P.2d 468 (1952). Severson contends the material terms for a deed of trust include provisions for forfeiture, default, risk of loss, liens by third parties, insurance, taxes, acceleration, and due-on-sale clauses, none of which are mentioned in the Security Addendum.

The provisions identified by Severson may indicate the existence of a "final agreement." Ecolite Mfg. Co. v. R.A. Hanson Co., 43 Wn. App. 267, 272, 716 P.2d 937 (1986). But Severson cites no authority indicating that all such provisions must be present to justify an order of specific performance of an agreement to provide a deed of trust. Together, the promissory note and the Security Addendum provide all material terms required to enforce the parties' agreement. The Security Addendum identifies the Lakemont Building as the property upon which a deed of trust was to be executed and recorded in case of default. The promissory note establishes when a default occurs. These terms

were sufficient to support an order requiring execution and recordation of a deed of trust to the Lakemont Building upon default.

Severson further contends that the Security Addendum is unenforceable under the real estate statute of frauds because its description of the Lakemont Building is inadequate. The property is described in the Security Addendum as follows:

> The real estate commonly known as: **The Lakemont Building, which is located at 5150 Village Park Dr. S.E.,** and more fully described as: **an unexecuted and unrecorded Deed of Trust on the I-90 Lakemont Building located at 5150 Village Park Dr. S.E., Bellevue, WA 98006.**

Washington has a special statute of frauds for real property that requires every real estate conveyance or encumbrance to be executed by deed. RCW 64.04.010. To comply with the real estate statute of frauds, every deed conveying an interest in platted real property must correctly describe the real estate by lot number, block number, addition, city, county, and state to be enforceable. RCW 64.04.010; Key Design Inc. v. Moser, 138 Wn.2d 875, 881, 983 P.2d 653, 993 P.2d 900 (1999). The description quoted above does not include all of these items.

The real estate statute of frauds does not encompass all contracts that refer to real property. Firth v. Lu, 146 Wn.2d 608, 614-15, 49 P.3d 117 (2002). It applies only to: "(1) actual conveyances of title or interests in real property; and (2) agreements that create or evidence an encumbrance of real property." Firth, 146 Wn.2d at 614. If an agreement does not fall within those two categories, it

may be enforced so long as the property that is the subject of that agreement can be readily identified. See Firth, 146 Wn.2d at 614-15.

Severson does not demonstrate that the unrecorded Security Addendum is a conveyance, or that it creates or evidences an encumbrance. It reflects a promise by the signatories to create a deed of trust if and when SR Development defaulted on the loan. According to the terms of the Security Addendum, the holder of the promissory note may require "the undersigned" to "execute and properly record a Deed of Trust" on the Lakemont Building if payment under the note is not timely received. Thus, the Security Addendum is not itself a deed of trust. If it were a deed of trust, there would have been no need for the borrowers to promise to execute and record a deed of trust in the future in the event of a default. We conclude the real estate statute of frauds does not apply because the Security Addendum did not convey or encumber the Lakemont Building.

Continuing with the mistaken premise that the Security Addendum was a conveyance or encumbrance, Severson contends that specific performance was improper because the Security Addendum was not signed by anyone who had the ability to convey or encumber the Lakemont Building. The Lakemont Building was owned by 1-90 Lakemont. The Security Addendum was signed by the Roberts and Severson individually, with no indication that they were acting on behalf of I-90 Lakemont.

The lack of signature by anyone acting on behalf of I-90 Lakemont does not render the Security Addendum unenforceable. Severson and the Roberts were the controlling owners of I-90 Lakemont. They were the individuals who

would have the authority to execute and record a deed of trust to the Lakemont Building in the event of a default on the promissory note. Severson provides no basis for holding that his promise to do so in the Security Addendum is unenforceable.

Finally, Severson contends it was inequitable to enforce the Security Addendum against him because of his detrimental reliance on certain statements by Larasco. To prevail under a theory of equitable estoppel, Severson must establish a statement upon which he detrimentally relied and that his reliance was reasonable. Laymon v. Dep't of Natural Res., 99 Wn. App. 518, 525, 994 P.2d 232 (2000).

Severson claims to have believed that SR Development satisfied its obligations under the first promissory note by paying Larasco $500,000 ahead of schedule. He says he understood that Larasco needed cash, and the consideration to SR Development for the advance payment of $500,000 was discharge of the original note. Severson alleges that Larasco confirmed this understanding in unrelated bankruptcy litigation.

The trial court found the evidence Severson presented to support this argument was less credible than Larasco's evidence. The court concluded the parties never intended to discharge the obligations under the first promissory note. The trial court's findings underlying this conclusion are supported by substantial evidence. Accordingly, the trial court's conclusion will not be disturbed.

Because we reject Severson's argument that the Security Addendum was void and of no effect, we necessarily reject his argument that Larasco lacked substantial justification for recording a lis pendens against the Lakemont Building.

In summary, the Security Addendum specifies the material terms necessary to support the award of specific performance, its description of the Lakemont Building did not need to comply with the real estate statute of frauds, it was signed by individuals who had the capacity to carry out the promise they undertook, and its enforcement against Severson is not inequitable. The trial court did not err in ordering specific performance of the promise to execute and record a deed of trust to the Lakemont Building.

## THE UNCONDITIONAL GUARANTEE DID NOT INCLUDE LIABILITY FOR ATTORNEY FEES

Severson claims the trial court erred by requiring him to pay Larasco's attorney fees as a guarantor.

In Washington, a litigant is generally not entitled to attorney fees unless authorized by contract, statute, or a recognized ground in equity. Barnett v. Buchan Baking Co., 108 Wn.2d 405, 408, 738 P.2d 1056 (1987).

The promissory note provides for an award of attorney fees for loan-related litigation, but the only entity obligated by the note's provision is SR Development:

> In case suit or action is commenced to collect this note or any portion thereof I/We, **SR DEVELOPMENT, LLC** promises to pay, in addition to the costs provided by statute, such sum as the court may adjudge reasonable as attorney's fees therein (including any

action to enforce the judgment and this provision as to attorney's fees and costs shall survive the judgment.).

Larasco contends that Severson became personally liable for the award of attorney fees against SR Development by signing the Unconditional Guarantee. There is no specific reference to attorney fees in the Unconditional Guarantee. However, the guarantee refers to the terms of the promissory note. The operative terms of the guarantee are found in its first paragraph:

> For value received, at the request of the undersigned and in reliance on this guaranty, the undersigned as a direct and primary obligation, hereby, jointly and severally, unconditionally guarantee(s) the prompt payment of principal and interest on **Promissory Note No. 08-0002**, executed on even date herewith, when and as due in accordance with its terms, and hereby waive(s) diligence, presentment, demand, protest, or notice of any kind whatsoever, as well as any requirement that the holder exhaust any right or take any action against the maker of the foregoing promissory note and hereby consent(s) to any extension of time or renewal thereof.

Severson responds that the words used in the guarantee— "unconditionally guarantee(s) the prompt payment of principal and interest"— make him liable only for the principal and interest accrued on the note.

"Sureties and guarantors are not held liable beyond the express terms of their agreement." Kenney v. Read, 100 Wn. App. 467, 474, 997 P.2d 455, amended on denial of recons., 4 P.3d 862 (2000). When a guarantee is part of a transaction involving multiple documents, all of the instruments must be read together even if they are not executed by the same parties. Kenney, 100 Wn. App. at 474. If a guarantee can be reasonably interpreted to have more than one meaning, it should be construed against the drafter. Seattle-First Nat'l Bank v. Hawk, 17 Wn. App. 251, 256, 562 P.2d 260 (1977).

10

The Roberts, who were the other guarantors, interpret the guarantee language to include all amounts due under the note, including attorney fees. Larasco contends the Roberts' interpretation is significant extrinsic evidence of intent.

Under the "context rule," extrinsic evidence can be used to discern contractual intent, but only so long as it does not subtract from, vary, or contradict the written words of a contract. Berg v. Hudesman, 115 Wn.2d 657, 667-78, 801 P.2d 222 (1990). Here, the written words of the guarantee ensure payment of principal and interest on the note. They do not guarantee anything else. We cannot add language to the guarantee to make it conform to the extrinsic evidence. "Extrinsic evidence is to be used to illuminate what was written, not what was intended to be written." Hollis v. Garwall, Inc., 137 Wn.2d 683, 697, 974 P.2d 836 (1999); see also MacLean Townhomes, L.L.C. v. Am. 1st Roofing & Builders Inc, 133 Wn. App. 828, 831, 138 P.3d 155 (2006). If the intent was to have Severson and the Roberts guarantee attorney fees that might be awarded to Larasco against the maker of the note, the guarantee should have used a broader phrase, such as "all obligations under the note," rather than merely guaranteeing principal and interest.

Larasco suggests it is only fair that Severson should have to pay attorney fees because Severson's answer asserted a contractual right to recover attorney fees if he prevailed. But Severson was responding on behalf of SR Development as well as himself. SR Development was relying on the attorney fee provision in the note, not necessarily on the language of the guarantee.

11

In a case cited by Larasco, our Supreme Court held a guarantor liable for the attorney fees incurred to collect money under a contract even though the guarantor did not expressly agree to guarantee those costs. N. Pac. Fin. Corp. v. Howell-Thompson Motor Co., 162 Wash. 387, 298 P. 424 (1931). The contract in that case contained an express promise by the vendee to pay attorney fees. The vendor assigned the contract. In the assignment, the vendor guaranteed the payment of all moneys "due or to become due under said contract" as well as "all costs incurred by holder." N. Pac. Fin. Corp., 162 Wash. at 388. In view of the broad phrasing of the guarantee, the court determined that even though the guarantee did not specifically mention attorney fees, "all of the provisions of the contract are guaranteed by the defendant," including the promise to pay attorney fees. N. Pac. Fin. Corp., 162 Wash. at 393.

Severson's guarantee is not as broad. Severson's guarantee of payment of principal and interest on the note "when and as due in accordance with its terms" does not encompass the attorney fee provision in the note. The attorney fee provision in the note was binding only on SR Development.

Larasco argues that the award of attorney fees against Severson can be upheld as a matter of equity. Attorney fees may be awarded to a prevailing party when a case is resolved under principles of equity or if litigation has been pursued in bad faith. Wright v. Dave Johnson Ins., Inc., 167 Wn. App. 758, 784, 275 P.3d 339, review denied, 175 Wn.2d 1008 (2012); Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 926-27, 982 P.2d 131 (1999), review denied, 140 Wn.2d 1010 (2000). The judgment here sounds in contract, not

equity, and the trial court did not find that Severson pursued this matter in bad faith.

The liability of a guarantor "cannot be enlarged beyond the strict intent of his contract." Hansen Serv. v. Lunn, 155 Wash. 182, 191, 283 P. 695 (1930). We conclude the court erred in holding Severson personally liable for Larasco's attorney fees.

## MOTION TO STRIKE

Although the Roberts were once Severson's codefendants, they settled with Larasco before trial and entered into a stipulation that capped their liability for attorney fees as of the date of the stipulation. Having settled, they did not file a notice of appeal. Nevertheless, on August 4, 2014, the Roberts filed a brief as respondents opposing Severson's appeal. The Roberts claim that they are entitled to address this court "in order to avoid any prejudice to them that might result from this appeal if the trial court's decision were not affirmed."

Severson moved to strike the Roberts' brief on the ground that the Roberts have no standing to oppose his appeal:

> The Roberts brothers stipulated that they would be liable for a sum certain regardless of the outcome of this litigation. They did so under no duress and while represented by counsel. Now, the Roberts brothers want to file a responsive brief despite having intentionally removed themselves from the case by stipulating to judgment. In reality, the Roberts' brief is an amicus brief filed without permission of the Court in violation of RAP 10.6. The Roberts have no basis to file a brief to protect their "rights," and are not a respondent to this appeal. The Roberts' brief should be stricken.

The Roberts oppose the motion to strike. If the motion is granted, the Roberts request that this court clarify "that any relief Severson may obtain will be conditioned on a lack of adverse effect on them." The cases the Roberts cite as authority do not even remotely suggest that a defendant who has settled prior to trial has the right to file a brief in a codefendant's appeal.

If there are multiple parties on a side of a case and fewer than all of the parties on that side timely file a notice of appeal, this court will grant relief only (1) to a party who has timely filed a notice, (2) to a party who has been joined, or (3) to a party if demanded by the necessities of the case. RAP 5.3(i). This court will permit the joinder of a party who did not give notice only if the party's rights or duties are derived through the rights or duties of a party who timely filed a notice of appeal. RAP 5.3(i); see, e.g., Genie Indus., Inc. v. Market Trans., Ltd., 138 Wn. App. 694, 707-16, 158 P.3d 1217 (2007). The Roberts do not invoke RAP 5.3 nor do they explain why this court should determine that they are necessary parties to this appeal.

The motion to strike is granted. The judgment on the note is affirmed. The award of attorney fees against Severson individually is reversed.

Becker, J.

WE CONCUR:

Appelwick, J.

Cox, J.

14