[No. 42904.    En Banc.    December 13, 1973.]

STANLEY E. TOMBS, *Petitioner*, v. NORTHWEST AIRLINES, INC., *Respondent*.

*Russell W. Newman* and *Merges, Brain, Youngberg, Allen & Larson,* by *G. Robert Brain* and *Robert H. Larson,* for petitioner.

*Skeel, McKelvy, Henke, Evenson & Betts* and *Fred Betts,* for respondent.

UTTER, J.—This is an appeal by Northwest Airlines, Inc. (Northwest) from a judgment of the trial court sitting without a jury. The court awarded retirement benefits to Stanley A. Tombs under its interpretation of a series of collective bargaining agreements between Northwest and

the Airline Pilots' Association of which Tombs was a member.

The issues presented on appeal are the nature of the court's jurisdiction, if any, under the arbitration clause of the Northwest Airlines, Inc., Pilots' Pension Plan (Plan) and the duty of the Retirement Board (Board) established by that agreement to promulgate rules and procedures. We affirm the unpublished opinion of the Court of Appeals and remand the case to the Retirement Board to establish rules of procedure and to give Tombs a hearing consistent with basic due process.

The collective bargaining agreements were negotiated between Northwest and the Airline Pilots' Association (ALPA), of which Tombs was a member in good standing at all pertinent times. Tombs was employed as an airline pilot by Northwest on August 5, 1940, and worked in that capacity until he went on sick leave December 22, 1962, as a result of a nervous disorder. This sick leave was extended from time to time until December 22, 1967, when Tombs retired and subsequently applied for retirement benefits under the pilots' pension plan. By a letter to Tombs dated April 1, 1968, the secretary of the Board set forth a computation of the benefits to which Tombs was entitled and enclosed checks representing sums due him under the retirement plan. Tombs disagreed with the computation of benefits which apparently was based upon a conclusion by the Board that his date of retirement was May 1, 1963. The Board's computation based his retirement on the date on which his paid sick leave benefits expired, rather than December 22, 1967, the date on which he left extended medical sick leave. Tombs consulted his attorney who wrote to the secretary on April 9, 1968, advising him, in relevant part, that there was "no basis" for the Board's conclusion that Tombs retired in 1963 and stating:

> It is necessary therefore that Mr. Tombs bring an action against Northwest Airlines under the retirement contract to establish his retirement in accordance with the actual date of retirement in December of 1967, rather than the assumed date of 1963.

Although the Retirement Board met on April 18, 1968, and declined to change its ruling as to Tombs' retirement date, this was not communicated to Tombs' attorney until July 17, 1968. In the interim, on May 2, 1968, Tombs commenced the lawsuit which is the subject of this appeal.

Section 17 of the Plan provides that the Retirement Board, consisting of four members and two alternates equally divided to represent Northwest and ALPA, has the responsibility for "Development of all rules and procedures not otherwise specified in This Plan itself" and for the "Arbitration of disputes arising out of the application and interpretation of This Plan." Section 17 sets forth a 2-step process for the resolution of such a dispute. First, the dispute is submitted to the Retirement Board for decision. If the Board is able to reach a decision, the decision is final and binding on all concerned. Second, in the event the Board is unable to reach a decision, the matter is to be referred to an impartial neutral to be selected by the Board. If the Board is not able to agree upon the selection of an acceptable neutral, then such neutral is to be selected by the National Mediation Board. The dispute is then determined by arbitration before the Retirement Board with the designee of the National Mediation Board as a neutral fifth member. When the Board as thus constituted reaches a decision by a majority of three of the five persons, such decision is final and binding upon all parties.

Tombs did not request arbitration under section 17 of the Plan when he disputed the retirement date assigned him, but instead, gave notice through his attorney's letter of April 9, 1968, of his intention to bring a lawsuit to resolve the dispute concerning his retirement benefits. At the same time, the Retirement Board did not advise Tombs that the dispute must be resolved by arbitration, but rather considered the letter from Tombs' attorney and subsequently advised him that the Board declined to change its ruling as to Tombs' retirement date. In this connection, the trial court found:

That the defendant NORTHWEST AIRLINES, INC. and the

Pension Board created in said contract have never adopted any rules or regulations for an arbitration hearing.

Finding of fact No. 8.

That no arbitration hearing was ever held on the plaintiff's claim for full benefits under the Plan.

Finding of fact No. 9.

Northwest may enter into an arbitration agreement with an association of employees such as ALPA providing for

any method and procedure for the settlement of existing or future disputes and controversies, and such procedure shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.

RCW 7.04.010. Section 17 of the Plan constitutes a "method and procedure" within the meaning of the statute for the settlement of disputes over retirement benefits, notwithstanding the trial court's finding that the Board has never adopted specific rules or regulations for an arbitration hearing.

It is apparent from the record that neither party to this lawsuit made a meaningful effort to invoke the arbitration, provisions of the Plan. Tombs never requested a hearing before the Board; he simply rejected the benefits tendered and gave notice through his attorney's letter of April 9, 1968, of his intention to file suit. The Board never advised Tombs that he should have his dispute resolved pursuant to the provisions of section 17 of the Plan; it simply met on April 18, 1968, and rejected Tombs' contention that he was entitled to a computation of benefits based upon the 1967 retirement date.

█ Agreements to arbitrate are valid and will be enforced by the courts. *Hanford Guards Local 21 v. General Elec. Co.*, 57 Wn.2d 491, 358 P.2d 307 (1961); *Keith Adams & Associates, Inc. v. Edwards*, 3 Wn. App. 623, 477 P.2d 36 (1970). As we stated in *Hanford Guards Local 21*, at page 498:

It is the evaluation and conclusion of the arbitrator, and not those of the courts, that the parties have promised to abide by. There is no reason why, in the face of their solemn agreement, the parties should be given an alternative of invoking the time consuming and costly machinery of the courts in lieu of the relative expedience of an arbitration proceeding.

A fundamental rule in arbitration of disputes, however, is that the duty of arbitrators is to make a fair and impartial award. "An arbitration implies a difference, a dispute, and involves ordinarily a hearing and all thereby implied. The right to notice of hearings, to produce evidence and cross-examine that produced is implied when the matter to be decided is one of dispute and difference." *Omaha v. Omaha Water Co.*, 218 U.S. 180, 194, 54 L. Ed. 991, 30 S. Ct. 615 (1910). Parties, independent of statute, have a right to be heard and opportunity to present evidence as to all matters submitted. *Grimes v. Home Ins. Co.*, 217 N.C. 259, 7 S.E.2d 557 (1940). Unless obviated by statute, agreement or waiver, the parties to an arbitration are entitled to reasonable notice of the time and place of hearings and have an absolute right to be heard and to present evidence before the board. *Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc.*, 112 Colo. 155, 147 P.2d 828 (1944). While the law favors and encourages settlement of controversies by arbitration and arbiters are not expected or required to always follow the strict and technical rules of law, they still must proceed with due regard to the rights of the parties. *Modern Sys. Bakery v. Salisbury*, 215 Ky. 230, 284 S.W. 994 (1926). An award made without notice and hearing, in absence of a waiver by the parties agreed, is a nullity. *Omaha v. Omaha Water Co., supra* at 198; *Auburn v. Paul*, 113 Me. 207, 93 A. 289 (1915).

Our court in *Puget Sound Bridge & Dredging Co. v. Lake Washington Shipyards*, 1 Wn.2d 401, 96 P.2d 257 (1939), recognized that arbitration is judicial in nature and its basic requisite, like that of all English and American jurisprudence, is that persons whose rights and obligations are affected thereby, have an absolute right to be heard and

to present evidence, after reasonable notice of the time and place of the hearing.

If these requisites of due process are met then, where the agreement provides as it does here, that "The decisions of the Retirement Board . . . shall be final and binding on the Company, the affected Member of This Plan and any other person having any interest or claim under This Plan," courts will not pass on the merits of the controversy because of a difference in interpretation of the agreement. An arbitrator's award, however, is legitimate only so long as it draws its essence from the collective bargaining agreement and is unenforceable if the arbitrator's award manifests an infidelity to his obligation to interpret the collective bargaining agreement and instead dispenses his own brand of industrial justice. 2 S. Williston, *A Treatise on the Law of Contracts* § 1420B, at 732 (3d ed. W. Jaeger 1968).

In the present case, the Board failed to establish "rules and procedures" for submission of the dispute to the Board for ruling. At the time of its initial letter to Tombs, the Board merely gave its own interpretation of Tombs' rights, with no knowledge of what his claim was. At no place in the agreement or correspondence of the Board was Tombs notified of a procedure whereby he could submit his differing interpretation of the contract to the Board for ruling. This failure violated the Board's duty under the agreement to establish "rules and procedures" and its common-law obligation as well. Its subsequent actions were a nullity. In light of the failure of the Board to initially establish rules and procedures for Tombs to present his differing interpretation of the contract, we do not find the filing of suit in superior court to be a waiver of his rights, under the agreement, to a full hearing by the Board.

Where the agreement provides for a method of resolving disputes that may arise between the parties, that method must be pursued before either party can resort to the courts for relief. *Jackson v. Walla Walla,* 130 Wash. 96, 226 P. 487 (1924); *Thorgaard Plumbing & Heating Co. v. King County,* 71 Wn.2d 126, 426 P.2d 828 (1967).

The trial court was without jurisdiction to determine the retirement benefits to which Tombs is entitled. We remand the matter to the Retirement Board to schedule forthwith a proper hearing affording all parties an opportunity to present testimony and argument in accordance with accepted concepts of due process.

In view of our holding that the trial court was without jurisdiction to act in this case, we need not reach the questions presented by Northwest's appeal on the merits.

The judgment is stricken and the cause remanded for further proceedings consistent with this opinion.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.