[No. 17691-9-I. Division One. January 8, 1988.]

B & D LEASING COMPANY, *Respondent,* v. ROBERT LEE AGER, ET AL, *Appellants.*

---

*J. Richard Manning, Rocky Lindell,* and *Samuel Stilt-ner,* for appellants.

*Leslie C. Terry, Katterheinrich & Terry, Daryl A. Deutsch,* and *Morris & Rodgers,* for respondent.

WILLIAMS, J.*—In 1983, appellant Peachtree Limited Partnership was a limited partnership of which appellant Carbon Company, Inc., was the general partner. At that time, Carbon Company held rights to the process of carbonizing peach pits and converting the same into energy for the production of electricity. Peachtree had a contract with Pacific Gas and Electric Company of California for the sale of the electrical power produced by the Carbon Company at its California plant.

On March 30, 1983, Peachtree sold certain powerhouse equipment to respondent B & D Leasing for $330,000. On April 6, 1983, the parties executed a lease agreement wherein Peachtree agreed to lease back the powerhouse equipment from respondent for $8,791.20 per month. That same day, the parties executed a lease guaranty agreement which was signed by appellants Robert and Sarah Ager. Robert Ager was then a principal shareholder and an officer and director of the Carbon Company, and was also a stockholder, chairman of the board, and chief executive officer of the appellant Life Insurance Company of America (LICA), a Washington corporation.

As further security for the purchase/leaseback transaction, Peachtree executed a promissory note and deed of trust in favor of respondent, and Ager sent a letter to respondent indicating that in the event of default by Peachtree, LICA guaranteed that it would purchase the promissory note and deed of trust. The letter was written on LICA stationery.

The various documentation executed by all parties to the lease transaction contained arbitration provisions which, in general, were worded as follows:

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

Arbitration: Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court . . .

Peachtree eventually became delinquent in its lease payments, and respondent attempted to collect from LICA under the guaranty agreement. LICA and Ager failed to comply with their guaranty agreements, and respondent filed the present action in superior court in March 1985. In the complaint, respondent acknowledged that its claims were subject to arbitration, and requested that the court order arbitration.

Shortly thereafter, Peachtree proposed a new payment schedule, and respondent agreed to hold its suit in abeyance as long as payments were timely. However, Peachtree soon became delinquent in payments again, and on June 3, 1985, respondent demanded an answer to its complaint. On June 18, 1985, appellants filed an answer which generally denied the allegations in the complaint. The answer did not request arbitration.

In September 1985, respondent filed a motion for summary judgment. On September 5, 1985, the parties again came to an agreement whereby respondent would refrain from pursuing the lawsuit if appellants paid their debt according to a schedule. However, once again, the payments were not forthcoming.

When further defaults occurred, respondent renewed its motion for summary judgment in December 1985. Appellants resisted the motion for summary judgment and filed a motion to compel arbitration.

On December 26, 1985, the trial court entered summary judgment for respondent and denied appellants' motion to compel arbitration. This appeal followed.

Following oral argument, counsel notified this court that pending chapter 11 bankruptcy proceedings involving appellants Robert and Sarah Ager have been converted to

chapter 7 proceedings, and that, pursuant to 11 U.S.C. § 362(a)(1) and (6), the instant action is stayed as to the Agers. Therefore, this opinion does not affect the rights and obligations of the Agers.

Appellants first contend the trial court erred in failing to enforce the arbitration provisions in the lease transaction agreements. They argue that (1) the mandatory language in the arbitration provision does not leave any discretion to the trial court; (2) the appellants did not waive their right to enforce the arbitration provision; and (3) even if respondent's waiver argument has merit, there is a genuine issue of fact as to whether a waiver occurred. On the other hand, respondent contends that appellants either expressly or impliedly waived the arbitration provision.

## WAIVER

■ Appellants correctly point out that agreements to arbitrate are valid, supported by public policy, and enforceable. *Tombs v. Northwest Airlines, Inc.*, 83 Wn.2d 157, 516 P.2d 1028 (1973). However, parties to an arbitration contract may expressly or impliedly waive that provision either by failing to invoke the provision when an action is commenced, or by conduct inconsistent with any other intention but to forgo the right to arbitration, *Lake Wash. Sch. Dist. 414 v. Mobile Modules Northwest, Inc.*, 28 Wn. App. 59, 621 P.2d 791 (1980).

Respondent argues that appellants waived their right to arbitration by (1) participating in negotiations with respondent, and by (2) delaying some 9 months to seek enforcement of the arbitration provision. Appellants, however, claim that these facts do not show waiver under *Lake Wash. Sch. Dist.*

In *Lake Wash. Sch. Dist.*, the Court of Appeals held that no waiver occurred when a 1–year delay in demanding arbitration was attributable to ongoing negotiations between the parties. *Lake Wash. Sch. Dist.*, at 63. The court also held that an additional 3–month delay in demanding arbitration after commencement of the action

was not, in itself, sufficient evidence of waiver. In so holding, the court acknowledged that "a party to a lawsuit who claims the right to arbitration must take some action to enforce that right within a reasonable time". *Lake Wash. Sch. Dist.*, at 64.

In the instant case, the delay in demanding arbitration lasted some 9 months after respondent filed an action in court. Though appellants argue that the 9–month delay cannot be considered evidence of waiver because the parties were conducting "settlement negotiations," it does not appear from the record that any "settlement negotiations" actually occurred. Rather, it appears that these so–called "settlement negotiations" were, in reality, agreements whereby respondent agreed to stay the pending action so that appellants could have one last chance to cure the default. However, since respondent's complaint *expressly requested arbitration,* the appellants' conduct prior to moving for arbitration is not necessarily consistent only with a waiver of the arbitration provision. Appellants could reasonably have been under the impression that the pending "action", as outlined by the complaint, was actually destined for arbitration, and therefore there was neither a need to request arbitration nor reason to believe that further defaults would result in a trial (as opposed to the arbitration requested in the complaint). Thus, appellants' conduct was not consistent only with a waiver of the right to arbitration, and therefore no waiver occurred.

## DECISION ON MERITS

Respondent also contends the trial court's denial of arbitration should be affirmed because a reversal at this point would result in unnecessary relitigation of issues. This argument is without merit.

■ As appellants correctly point out, essentially the same argument was rejected by our State Supreme Court in *Herring–Hall–Marvin Safe Co. v. Purcell Safe Co.,* 81 Wash. 592, 142 P. 1153 (1914). In that case, the defendant moved for a nonsuit on the ground that the plaintiff had

failed to offer to arbitrate in accordance with a mandatory arbitration provision in the parties' contract. The trial court denied the motion and, after hearing the evidence, found for the plaintiff. The Supreme Court reversed, stating:

> The trial court rested its decision on the ground that, at the time of commencement of the action, there existed no matter in dispute between the parties, and made a finding to that effect. In our opinion this conclusion finds no support in the evidence. As will be observed from our statement of the issues, there was a clear dispute in the pleadings on all of the matters essential to a recovery by the respondent. The evidence bore out the allegations of the pleadings. . . . It may be that the appellant's claims are not meritorious, or that the weight of the evidence is against it, *and that the decision of the court was right upon the merits, but this does not justify a finding that there is no dispute between the parties. The merits of the dispute were not for the court to decide. The parties had agreed upon another tribunal to determine them, and that tribunal might reach another conclusion.* It is the fact that a dispute had arisen, not the merits of the dispute, that bars the right to resort to the courts before the remedies provided in the contract for determining them are exhausted.

(Italics ours.) *Herring–Hall–Marvin Safe Co.,* at 595–96. Accordingly, the Supreme Court remanded the case for arbitration as required under the contract. Thus, this court clearly can remand for arbitration even if relitigation of issues will result.

### WAIVER BY BREACH

Finally, citing *Winsor v. German Sav. & Loan Soc'y,* 31 Wash. 365, 72 P. 66 (1903), respondent contends appellants waived the arbitration provision when they breached the parties' contract. This argument is without merit.

Though *Winsor* does stand for the propositions asserted by respondent, the case is no longer valid authority. As appellants point out, *Winsor* (1) is apparently the only case of its kind in the country, *see* Annot., 32 A.L.R.3d 377, 383 (1967); (2) is against the weight of all relevant

authority; and (3) was overruled *sub silentio* by subsequent cases upholding arbitration in the face of allegations that the party seeking arbitration had committed a willful breach. *See Herring–Hall–Marvin Safe Co.,* at 596.

In summary, appellants did not waive their right to arbitration, and the trial court erred in failing to order arbitration. However, if, as appellant LICA contends, the LICA guaranty is void, then LICA is not bound by the terms of the agreements, including the arbitration provisions. Therefore, we must determine whether LICA's guaranty is void.

## LICA GUARANTY

LICA contends the guaranty is void because RCW 48.07-.080 prohibits insurance companies from guaranteeing the personal financial obligations of their officers. On the other hand, respondent argues that (1) the obligation at issue was not a guaranty; and (2) even if the obligation was a guaranty, it is not a guaranty prohibited by statute.

■ It is well settled in Washington that an agreement will generally be construed as a guaranty if it

> is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily. An approved definition of 'guaranty' is 'a promise to answer for the debt, default, or miscarriage of another person.'"

*Robey v. Walton Lumber Co.,* 17 Wn.2d 242, 255, 135 P.2d 95, 145 A.L.R. 924 (1943) (quoting 24 Am. Jur. *Guaranty* § 2, at 873–74 (1939)).

> "A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor.

*Robey v. Walton Lumber Co.,* 17 Wn.2d 242, 255, 135 P.2d 95, 145 A.L.R. 924 (1943); (quoting 24 Am. Jur. *Guaranty* §

4, at 875–76 (1939)). In the instant case, the parties disagree as to whether the agreement between LICA and respondent was a contract of guaranty. The agreement states:

"Life Insurance Company of American [sic], by letter dated March 25, 1983, for the purpose of inducing B&D Leasing Company, as Lessor, to enter into the above–described Master Lease Agreement with Peachtree Partnership, as Lessee, has agreed that as additional security, Life Insurance Company of American [sic] will guarantee that in the event of a default by Peachtree Partnership of the lease payments as in the Master Lease specified, Life Insurance Company of America will purchase by certified or bank cashier's check both the above–described Promissory Note (Addendum E) and the Short Form Deed of Trust (Addendum F) for the full amount due on the Promissory Note. A copy of the executed letter of commitment is attached hereto as Addendum G and the whole made a part hereof as though fully set forth.

Respondent argues that this agreement is not a guaranty because LICA "never agreed to assume the performance of Peachtree's lease obligations in the event of a default by Peachtree." This argument ignores the plain language in the agreement to the effect that LICA's obligation is "additional security" to "guarantee" Peachtree's performance, and that LICA will provide such security "in the event of default" by another (i.e., Peachtree). This arrangement is clearly a guaranty whereby LICA promised to perform in the event of another's nonperformance. Therefore, we must determine whether the guaranty is void under RCW 48.07-.080.

LICA contends the guaranty is void because RCW 48.07-.080 prohibits an insurance company from guaranteeing one of its own officer's personal obligations. The statute states:

Guarantee of officers' obligations prohibited. No domestic insurer or its affiliates or subsidiaries shall guarantee the financial obligation of any director or officer of such insurer or affiliate or subsidiary in his personal capacity, and any such guarantee attempted shall be void.

This prohibition shall not apply to obligations of the insurer under surety bonds or insurance contracts issued in the regular course of business.

In applying this statute to the facts presented in the instant case, a question arises as to whether the LICA guaranty was a guaranty of Ager's "*personal*" obligation. In this regard, respondent argues that since the guaranty secured *Peachtree's* obligation, and since Ager's only possible interest in Peachtree was through his position as principal shareholder of Peachtree's general partner, Carbon Company, the obligation secured by the guaranty was not Ager's *personal* obligation, and therefore the statute does not apply. This argument is not persuasive.

 Statutes should be construed to further the purpose and intent of the Legislature. *Hart v. People's Nat'l Bank,* 91 Wn.2d 197, 588 P.2d 204 (1978). A fair reading of RCW 48.07.080 indicates that its purpose is to preserve and foster the financial integrity and stability of insurance companies, and to thereby protect innocent policy holders, by prohibiting the mixing of company investments and obligations with investments and obligations in which company officials have a financial interest. When the statute is read with this purpose in mind, it is clear that, in the circumstances presented here, the LICA guaranty is prohibited by the statute. As LICA correctly points out, not only does Ager have a personal interest in Peachtree's obligation by virtue of his interest in the Carbon Company, but he also has an interest because he personally guaranteed Peachtree's lease obligation. Because the LICA guaranty provided security in addition to Ager's personal guaranty, it served to insulate Ager's position as guarantor, and Ager stood to benefit from that arrangement.[1] We conclude, therefore, that the LICA guaranty is void under RCW 48.07.080.

---

[1]The potential benefit to Ager is demonstrated by correspondence in the record, which states: "In the event Life Insurance Company of America, Inc., should pay the $300,000.00, you [Ager] will be provided a credit and be responsible for the amount owing on the lease above that sum."

Finally, appellants contend the trial court erred in awarding respondent $5,070 in attorney's fees because there is nothing in the record to support the award amount. However, respondent correctly points out that the uncontroverted affidavit of Leslie Clay indicates the parties agreed, in September 1985, that in consideration for respondent's promise to stay the summary judgment action, appellants would, among other things, pay respondent $5,000 for legal expenses incurred. Therefore, since appellants have not responded to this argument, and have pointed to no affidavits denying the existence of the agreement regarding fees, the trial court did have a basis for awarding the $5,070 in fees, and such award was actually no more than an enforcement of a separate agreement between the parties.

The judgment is affirmed as to the award of attorney's fees, and is reversed and remanded for entry of an order dismissing LICA, and an order requiring arbitration of the remaining issues.

CALLOW and THIBODEAU, JJ. Pro Tem., concur.