6 P.3d 91 (2000)
101 Wash.App. 954
Wallace HARTING and Linda Harting, Husband and Wife, Respondents,
v.
George BARTON, Appellant,
Nevada Land and Livestock, a corporation, Defendant.
No. 17699-1-III.
Court of Appeals of Washington, Division 3, Panel Three.
August 17, 2000.
*93 Mary E. Schultz, Spokane, for Appellant.
Richard F. Monahan, Roach, Monahan & Lowry, Walla Walla, for Respondents.
*92 SWEENEY, J.
This is a dispute over a farm lease and option to purchase agreement. The lease and option agreement required the lessee/optionee to farm the property in a "professional farm-like manner." The dispositive question is whether testimony that established the farming standards in Columbia County was sufficient for the court to conclude that the lessee/optionee had failed to farm in a "professional farm-like manner." The standard for farming practices is not statewide, like that for physicians and lawyers. Therefore, testimony that the lessee had failed to farm the property in a professional farm-like manner based on farming practices in Columbia County and the surrounding area is sufficient to support the court's conclusion that the lessee breached this lease obligation.
A second question raised is whether notice of claim and mediation clauses in the lease deprived the superior court of subject matter jurisdiction. They did not. They were merely conditions precedent to litigation, and as such can be waived by the parties. And here they were waived.
After addressing other tangential issues joined by the parties, we affirm the judgment of the trial court that terminated the lease and purchase option.

FACTS
Wallace and Linda Harting own a farm that they lease on a crop share basis. But they were disappointed with their returns one-third of the crop proceeds. George Barton, on behalf of Nevada Land and Livestock, expressed interest in purchasing the farm.
Mr. Barton agreed to pay $146,000 down and a share of the crop on a lease/option. Under one agreement Mr. Barton orally agreed to pay the Hartings 50 percent of the crop. The parties signed an agreement whereby Mr. Barton agreed to pay the Hartings 25 percent of the crop.
The lease ran from August 1, 1995, through December 31, 1997. It included an option to purchase for $800,000. The $800,000 purchase price would be paid annually "in the form of the cash value of grain delivered to elevator storage, being not less than one-fourth of the grain harvested from the premises."
Mr. Barton agreed to "operate the cultivatable land in a professional farm-like manner" and not commit "waste or damage to the farm[.]" He also agreed to pay property taxes for the 1996 tax year. Both parties were required to give the other notice of any default under the lease. The lease required mediation "except in the case of emergency."
In the early spring of 1996, it appeared that Mr. Barton would plant a spring crop. But he failed to completely seed the new crop because he ran out of money. Mr. Harting finished seeding the spring crop. Mr. Harting nevertheless suffered a substantial loss because of the delay. Mr. Barton did not timely cultivate, spray, or seed the fields in the fall of 1996.
Mr. Harting decided that Mr. Barton did not have the financial wherewithal to farm the property and sued to rescind the lease and purchase option. Mr. Barton counterclaimed for specific performance of the lease option or damages.
In the spring of 1997, Mr. Barton again either failed to spray for weeds or sprayed too late. Weed growth reduced the crop and created long-term problems that diminished the value of the land.
*94 Mr. Barton also did not pay the property taxes for 1996, 1997, or 1998.
On April 14, 1997, Mr. Barton sent the Hartings a letter purporting to exercise the option to purchase. The Hartings rejected the overture.
On July 18, Mr. Barton moved for summary judgment. He asked the court to find the lease valid and order specific performance of the option. The court denied his motion.
Following a bench trial, the court concluded that Mr. Barton breached the lease by failing to farm in a professional farm-like manner in 1995, 1996, and 1997. The court concluded that Mr. Barton breached the lease by not paying the property taxes from 1996 through 1998. It also concluded that Mr. Barton fraudulently induced the Hartings into entering the lease and purchase option. It then terminated the lease and purchase option and ordered Mr. Barton to pay the Hartings' attorney fees.

ANALYSIS

CAUSE OF ACTION STATED IN THE COMPLAINT
Mr. Barton first complains that the Hartings' complaint fails to state a legal cause of action. The Hartings respond that this challenge comes too late, since the first time it was raised was here in the Court of Appeals. Mr. Barton must show that no cause of action can be stated by amendment or otherwise, or that the complaint shows on its face that the Hartings are not entitled to relief. Stewart v. Beghtel, 38 Wash.2d 870, 873, 234 P.2d 484 (1951).
The Hartings alleged that Mr. Barton breached the contract because he failed to provide financial documentation on demand and failed to plant a 1996 spring crop. The Hartings also complained that Mr. Barton failed to farm in a "professional farm-like manner." They alleged that these unprofessional practices resulted from Mr. Barton's inadequate financial backing. The complaint also alleges that Mr. Barton did not pay the property taxesanother requirement of the contract.
This complaint described a breach of contract cause of action. Id. And that is precisely the legal issue these parties wrangled over and the issue the trial court resolved.

JURISDICTION  MEDIATION AND NOTICE OF DEFAULT
Mr. Barton next contends that the court did not have jurisdiction to hear the case because the Hartings failed to invoke the contractual mediation and notice of default provisions first. Mr. Barton raises the jurisdiction issue for the first time on appeal. But lack of jurisdiction may be raised at any time. RAP 2.5(a)(1); Inland Foundry Co. v. Spokane County Air Pollution Control Auth., 98 Wash.App. 121, 123, 989 P.2d 102 (1999).
The Hartings argue the mediation and notice of default clauses are not jurisdictional and Mr. Barton waived the defense by failing to object in his pleadings and by filing a counterclaim.
Subject Matter Jurisdiction. Mr. Barton contends the notice and mediation provisions divested the court of subject matter jurisdiction. He is mistaken.
"Subject matter jurisdiction is the authority to hear and determine the class of action to which a case belongs, not the authority to grant the relief requested, or the correctness of the decision." Bour v. Johnson, 80 Wash.App. 643, 647, 910 P.2d 548 (1996).
Washington superior courts have broad subject matter jurisdiction. Const. art. IV, § 6. Thus, we "may only find a lack of jurisdiction under compelling circumstances, such as when it is explicitly limited by the Legislature or Congress." In re Marriage of Major, 71 Wash.App. 531, 534, 859 P.2d 1262 (1993) (citing Const. art. IV, § 6).
Mr. Barton relies on Tombs v. Northwest Airlines, Inc.[1] and Absher Constr. Co. v. Kent Sch. Dist. No. 415[2] to support his *95 contention that the mediation and notice provisions divested the court of subject matter jurisdiction. Both cases are easily distinguishable.
In Absher, a contract required the plaintiffs to give written notice of any claims, participate in a structured dispute resolution process, and mediate all disputes before suing in court. The plaintiffs acknowledged during contract negotiations that the written notice of claim and dispute resolution procedures were mandatory and could only be waived by an express written waiver. The plaintiffs filed suit without sending notice or pursuing the dispute resolution process. Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wash.App. 137, 139-40, 890 P.2d 1071 (1995). The Court of Appeals affirmed the summary dismissal of the suit because the plaintiffs did not give written notice of the claim and the defendants did not waive the notice requirement. Id. at 143-44, 890 P.2d 1071.
Here, the contract did not require a written waiver of the notice requirement. Nor did Mr. Barton insist on either the notice or mediation provisions.
In Tombs, the court concluded that "[w]here an agreement provides for a method of resolving disputes that may arise between the parties, that method must be pursued before either party can resort to the courts for relief." Tombs v. Northwest Airlines, Inc., 83 Wash.2d 157, 162, 516 P.2d 1028 (1973). But later cases have concluded that the dispute resolution provision may be waived even while acknowledging the language in Tombs. B & D Leasing Co. v. Ager, 50 Wash.App. 299, 303, 748 P.2d 652 (1988); Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Northwest, Inc., 28 Wash. App. 59, 61, 621 P.2d 791 (1980); see Steele v. Lundgren, 85 Wash.App. 845, 935 P.2d 671 (1997) (applying Federal Arbitration Act and affirming trial court conclusion that defendant waived contractual arbitration provision by litigating the plaintiff's claims for 10 months before seeking to compel arbitration); Shoreline Sch. Dist. No. 412 v. Shoreline Ass'n of Educ. Office Employees, 29 Wash.App. 956, 958, 631 P.2d 996, 639 P.2d 765 (1981) ("A party may waive arbitration by failing to invoke an arbitration clause when legal action is commenced and arbitration ignored"). The language in Tombs is loose and contrary to the weight of authority and clear constitutional mandates that confer broad subject matter jurisdiction. Const. art. IV, § 6.
A notice of claim or mediation clause in a contract does not deprive the court of subject matter jurisdiction. They merely condition a lawsuit and, as such, may be waived. B & D Leasing, 50 Wash.App. at 303, 748 P.2d 652; Lake Wash. Sch. Dist., 28 Wash.App. at 61, 621 P.2d 791. And Mr. Barton waived them here.
Affirmative Defenses. The next question is whether Mr. Barton did waive these defenses. A party shall affirmatively plead any matter constituting an avoidance or affirmative defense. CR 8(c). Thus, "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by applicable substantive law should be pleaded[.]" Shinn Irrigation Equip., Inc. v. Marchand, 1 Wash.App. 428, 430-31, 462 P.2d 571 (1969).
"`Generally, affirmative defenses are waived unless they are (1) affirmatively pleaded, (2) asserted in a motion under CR 12(b), or (3) tried by the express or implied consent of the parties.'" Henderson v. Tyrrell, 80 Wash.App. 592, 624, 910 P.2d 522 (1996) (quoting Bernsen v. Big Bend Elec. Coop., 68 Wash.App. 427, 433-34, 842 P.2d 1047 (1993)).
Here, the failure to provide notice of default or submit to mediation does not controvert a breach of contract claim. Shinn Irrigation Equip., 1 Wash.App. at 430-31, 462 P.2d 571. Rather, both contractual provisions were matters constituting "an avoidance or affirmative defense." CR 8(c). Mr. Barton, therefore, waived these defenses by failing to plead them and cannot raise them now.
Mediation. Furthermore, Mr. Barton cannot invoke the mediation provision at this point in the proceedings. Parties to an agreement may expressly or impliedly waive a dispute resolution provision either by *96 failing to invoke the provision when an action is commenced, or by conduct inconsistent with any other intention but to forego the right to dispute resolution. B & D Leasing, 50 Wash.App. at 303, 748 P.2d 652 (citing Lake Wash. Sch. Dist., 28 Wash.App. 59, 621 P.2d 791).
Mr. Barton waived the mediation provision because he did not demand mediation. He filed a counterclaim and moved for summary judgment and, thereby, waived his right to mediation.
Notice of Default. Again, Mr. Barton raises the Hartings' failure to give notice of default for the first time on appeal. But this comes over three years after Mr. Barton filed a counterclaim and moved for summary judgment. Mr. Barton was clearly on notice and again waived the notice provision. Absher, 77 Wash.App. at 142-44, 890 P.2d 1071; Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co., 4 Wash.App. 695, 700, 483 P.2d 880 (1971).

FARMING IN A "PROFESSIONAL FARM-LIKE MANNER"
Mr. Barton next contends that he farmed in a "professional farm-like manner" as required by the contract. He argues that he was not contractually obligated to plant a 1996 spring crop; Mr. Harting was. Report of Proceedings at 392. And, he continues, there is no evidence that failing to plant a crop in every season is negligent.
Mr. Barton also argues that the contractual obligation to farm in a "professional farm-like manner" is analogous to professional negligence. Therefore, the Hartings had to present expert testimony to show what farming in a "professional farm-like manner" meant. Walker v. Bangs, 92 Wash.2d 854, 857-58, 601 P.2d 1279 (1979). And their evidence showed only the local custom in Columbia County. That, he argues, is not enough to prove the standard of care because local practice is only one element in determining the standard of care. Pederson v. Dumouchel, 72 Wash.2d 73, 78-79, 431 P.2d 973, 31 A.L.R.3d 1100 (1967); Cusick v. Phillippi, 42 Wash.App. 147, 153, 709 P.2d 1226 (1985); Sanderson v. Moline, 7 Wash.App. 439, 440-41, 499 P.2d 1281 (1972).
Standard of Review. Mr. Barton does not contest the court's findings of fact. So we review the contested conclusion of law he did not farm in a professional farm-like mannerde novo to determine whether it is supported by the findings of fact. Nghiem v. State, 73 Wash.App. 405, 412, 869 P.2d 1086 (1994).
We are interpreting the contract and, therefore, must ascertain the intent of the parties. Berg v. Hudesman, 115 Wash.2d 657, 663, 801 P.2d 222 (1990).
The court found that although it appeared in early spring 1996 that Mr. Barton would plant a spring crop, he did not do so because of financial problems. Mr. Harting, therefore, took over but, nonetheless, suffered a substantial loss. Finding of Fact VI. In the fall of 1996, Mr. Barton did not cultivate, spray, or seed in a timely manner as per local custom. Finding of Fact VII. In the spring of 1997, Mr. Barton failed to spray in a timely manner, if he sprayed at all. His failure resulted in a weed infestation that reduced the crop and created long-term problems that diminished the value of the land. Finding of Fact IX.
As for the 1998 crop, Mr. Barton used equipment that caused "skips" throughout the fields and applied fertilizer in an inadequate and uneven manner to the field. And finally Mr. Barton did not pay the property taxes for 1996, 1997, or 1998. Finding of Fact XI.
Testimony on behalf of the Hartings was admitted without objection and is unchallenged on appeal. RAP 2.5(a); Viereck v. Fibreboard Corp., 81 Wash.App. 579, 586, 915 P.2d 581 (1996) (a party cannot complain on appeal to testimony it did not object to in trial court); Blodgett v. Great Northern Ry., 4 Wash.App. 741, 743, 483 P.2d 1276 (1971) (same). That testimony focused on the practices and custom of wheat farming in Columbia County where this property is located. Mr. Barton offered no evidence on what these parties meant by "professional farm-like manner."
Several witnesses familiar with the practices and customs in Columbia County testified that Mr. Barton did not farm the 1997 *97 crop in a "professional farm-like manner." And the record shows that Mr. Barton failed to control weeds and planted the 1997 crop late. Mr. Barton acknowledged that the 1997 crop was not farmed in a professional farm-like manner. Report of Proceedings at 51. He offered no proof of a statewide standard and given the variations in climate, soil, and crops in this state, we would be surprised if any was possible. The court's conclusion that Mr. Barton did not operate in a "professional farm-like manner" is amply supported by the factual findings here.
The professional liability standard for farmers is not comparable to physicians or lawyersat least not as Mr. Barton suggests. The court here properly concluded based on its findings of fact that Mr. Barton breached this contract by failing to farm in a "professional farm-like manner."
Given our disposition of this case, we need not address the Hartings' allegations and the court's conclusions of fraud in the inducement to enter this contract.

TERMINATION OF PURCHASE OPTION
The court concluded there was no independent consideration for the option to purchase. And the option cannot stand alone. The court therefore concluded that a breach of the lease also breached the option to purchase. Finding of Fact XII. As a result, it terminated the option. Conclusion of Law VI. Finding XII is a conclusion of law. And we review it as such. Ridgeview Properties v. Starbuck, 96 Wash.2d 716, 719, 638 P.2d 1231 (1982).
Mr. Barton contends that the option to purchase must be specifically performed. He reasons that the $800,000 was consideration for the purchase option.
Mr. Barton confuses the $800,000 purchase price with the consideration for the actual option to purchase. Syrovy v. Alpine Resources, Inc., 122 Wash.2d 544, 549-50, 859 P.2d 51 (1993) (rejecting argument that agreement was an option contract supported by $1,000 "valuable consideration" where the contract "in clear and plain language, states that the $1,000 payment was for the earnest money"). Here, the agreement, entitled "FARM LEASE with PURCHASE OPTION," stated:
I. LESSEE'S OPTION TO PURCHASE:
That for and in the consideration of Lessee's payment to Lessor on or before December 31, 1997, the amount of $1.00, and other consideration, in addition to Lessee's promise to pay taxes on the entire premises including those reserved by the Lessor, the Parties herein agree as follows:

FORM OF CONTRACT OF SALE
1. Lessors bind themselves to sell real property herein described to Lessee for the amount of $800,000.00. Lessee must exercise this option in writing to the Lessor not later than December 31, 1997.
The $800,000 was not consideration for the option to purchase. Rather, it was the purchase price for the property. Syrovy, 122 Wash.2d at 549, 859 P.2d 51.
The payment of taxes was consideration for the option to purchase. The court found that Mr. Barton did not pay taxes on the property. Finding of Fact XI. By not paying the taxes, Mr. Barton failed to perform the conditions for the lease and the option. McFerran v. Heroux, 44 Wash.2d 631, 638-39, 269 P.2d 815 (1954).

ATTORNEY FEES  HARTINGS
Pursuant to the Harting/Barton contract, we affirm the trial court's award of attorney fees to the Hartings. And we must award the Hartings attorney fees and costs on appeal. RAP 18.1; RCW 4.84.330; Singleton v. Frost, 108 Wash.2d 723, 727, 742 P.2d 1224 (1987); Kofmehl v. Steelman, 80 Wash.App. 279, 286, 908 P.2d 391 (1996).
Affirmed.
BROWN, A.C.J., and SCHULTHEIS, J., concur.
NOTES
[1] Tombs v. Northwest Airlines, Inc., 83 Wash.2d 157, 516 P.2d 1028 (1973).
[2] Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wash.App. 137, 890 P.2d 1071 (1995).