IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SEATTLE SHRIMP & SEAFOOD COMPANY, INC., a Washington corporation, | ) ) ) ) | No. 68428-1-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| ROBERT E. STILNOVICH AND DEBBIE NYGREN, a marital community, | ) ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) | |
| STILNO, INC., a Washington corporation d/b/a Samish Island Seafood, | ) ) ) ) | |
| Defendant. | ) | FILED: August 19, 2013 |

SCHINDLER, J. — Seattle Shrimp & Seafood Co. Inc. appeals summary judgment

dismissal of its claim against Robert Stilnovich and his spouse for payment of $150,000

based on a personal guarantee to Fox Business Systems. We affirm.

FACTS

Robert Stilnovich is the owner, sole shareholder, and president of Stilno Inc.

doing business as Samish Island Seafood (Samish). Samish purchases seafood from

suppliers to sell to its customers. Seattle Shrimp & Seafood Co. Inc. (SSSC) is a

seafood supplier that sells its products to companies throughout the United States.

In 2007, SSSC employee Danny Whitted contacted Stilnovich about purchasing shrimp from SSSC to sell to one of Samish's biggest customers, FoodMaxx. On March 21, 2007, SSSC agreed to extend credit to Samish to facilitate purchasing large quantities of shrimp.

Thereafter, SSSC and Samish would agree every six months on the total amount and price of the shrimp SSSC would sell to Samish. Samish would then "draw against that total poundage over the term of the period and SSSC would bill [Samish] for each individual draw using the quoted, fixed unit prices."

On July 1, 2008, Whitted sent Stilnovich an e-mail containing a "Master Sales Agreement" with the shrimp prices SSSC would charge Samish for the six-month period beginning August 1, 2008.

On July 31, SSSC faxed a one-page "Business Credit Application" and "Individual Personal Guarantee" for "Fox Business Systems" located at "531 Fort Riley Blvd., Manhattan, KS 66502" to Samish. Neither the Business Credit Application nor the Individual Personal Guarantee mention SSSC.

Stilnovich called Whitted about the Business Credit Application and personal guarantee. Whitted told Stilnovich that the credit application and guarantee were needed for Euler, the company that insured SSSC, "so they could extend the credit line."

Stilnovich filled out and returned the Fox Business Systems Business Credit Application and Individual Personal Guarantee. The Individual Personal Guarantee states:

> I, (name) Robert E. Stilnovich residing at (address) 9746 Samish Is. Road for and in consideration of your extending credit at my request to (company) Samish Island Seafood (hereinafter referred to as the "Company"), of which I am (title) President, hereby personally guarantee to you the payment at Fox Business Systems in the state of Kansas any obligation of the Company and I hereby agree to bind myself to pay you on demand any sum which may become due to you by the Company whenever the Company shall fail to pay the same. It is understood that this guarantee shall be a continuing and irrevocable guarantee and indemnity for such indebtedness of the Company. I do hereby waive notice default, nonpayment and notice hereof and consent to any modification of renewal of credit agreement hereby guarantee.[1]

The personal guarantee is dated July 31, 2008 and signed "Robert E. Stilnovich Title Pres." Below Stilnovich's signature is an initialed, handwritten note: "150,000 credit app. to FoodMax & Cash&Carry accounts only."

Two years later, SSSC entered into another agreement to continue extending credit with Samish. The September 21, 2010 letter agreement is signed by both SSSC and Stilnovich. The letter agreement states, in pertinent part:

> Seattle Shrimp and Seafood Company (SSSC) will continue to extend credit to Samish Island Seafood (Samish) and Bob Stilnovich to support Samish's sale of Ocean Gift brand shrimp to FoodMaxx through Jan 31, 2011 under the following conditions:
> - All SSSC invoices to Samish must be paid within terms and payment is to arrive at SSSC payment site no later than 42 days from invoice date.
> - Bob Stilnovich will have in place . . . a Key Man Life Insurance policy . . . with SSSC . . . as the sole beneficiary.
>
> . . . .
> This letter agreement is to supplement prior arrangements between SSSC and Samish. All other terms remain unchanged.

---

[1] (Emphasis added.)

3

In November and December 2010, Samish purchased shrimp from SSSC totaling $270,950. On January 25, 2011, SSSC filed a complaint for breach of contract against Samish and against Stilnovich, his spouse, and their marital community. SSSC alleged that in March 2007, it agreed to extend credit to Samish for seafood purchases and "[i]n conjunction therewith, the Defendant Robert E. Stilnovich personally guaranteed the repayment of all amounts owed by [Samish] to SSSC." SSSC alleged Samish and Stilnovich and his spouse "currently owe SSSC, jointly and severally, $270,950.00 plus interest, attorneys' fees and other recoverable costs."

SSSC filed a motion for summary judgment. SSSC asserted there was no material issue of fact that Samish owed SSSC $270,950, and that Stilnovich and his spouse were personally liable for $150,000 of the amount owed based on the personal guarantee he signed for Fox Business Systems.

Stilnovich filed a response and cross motion to dismiss the personal liability claim of $150,000 against him and his spouse. Samish argued there were material issues of fact as to the agreement with SSSC and the amount owed. Stilnovich denied signing a personal guarantee for the debts of Samish and pointed out that the guarantee he signed on July 31, 2008 does not mention SSSC.

The court granted the motion for summary judgment against Samish, and entered judgment against Samish for $319,487.23. The court allowed the parties to conduct additional discovery and submit supplemental briefing regarding the personal guarantee. SSSC deposed Whitted and Stilnovich. In supplemental briefing, SSSC admitted the personal guarantee was to a "third party not involved in the transaction" and that "the mistake was certainly solely created by the improper choice of form by

4

SSSC." Nonetheless, SSSC argued that because Fox Business Systems was not a party of the agreement, "the mistake does not relieve Stilnovich of liability" and "[a]s a matter of law, the Court should reform the contract to reflect that the guarantee flows to SSSC." The court granted the cross motion and dismissed Stilnovich and his spouse. SSSC appeals.

## ANALYSIS

SSSC contends the court erred in dismissing the lawsuit against Stilnovich and his spouse. SSSC claims Stilnovich and his spouse are liable for $150,000 of the amount owed based on the personal guarantee Stilnovich entered into with Fox Business Systems. SSSC asserts the record establishes an objective mutual intent that Stilnovich would sign a personal guarantee to pay $150,000 for amounts owed to SSSC.[2] SSSC concedes the guarantee names only Fox Business Systems and does not mention SSSC, but argues that the reference to Fox Business Systems is a scrivener's error subject to reformation.

We review summary judgment de novo and engage in the same inquiry as the trial court. Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).[3] Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c); Hansen v.

---

[2] For the first time on appeal, SSSC argues that in the alternative, genuine issues of material fact preclude summary judgment. SSSC briefly mentions this argument in the conclusion of its opening brief, and first makes the argument in its reply. But SSSC did not make this argument below, instead arguing that there were no genuine issues of material fact and that SSSC was entitled to judgment as a matter of law. "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. "An argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal." Sourakli v. Kyriakos, Inc., 144 Wn. App. 501, 509, 182 P.3d 985 (2008) (citing Sneed v. Barna, 80 Wn. App. 843, 847, 912 P.2d 1035 (1996)). We do not address this argument.

[3] Because the court considered matters outside the pleadings, we treat Stilnovich's cross motion to dismiss as a motion for summary judgment. Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

Friend, 118 Wn.2d 476, 485, 824 P.2d 483 (1992). We consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002). If in viewing all of the evidence reasonable minds could only reach one conclusion, summary judgment is appropriate. Hansen, 118 Wn.2d at 485.

A guarantee promises a creditor that the guarantor will perform in the event of nonperformance by the debtor. B & D Leasing Co. v. Ager, 50 Wn. App. 299, 306, 748 P.2d 652 (1988). But "[a] guarantor is not to be held liable beyond the express terms of his or her engagement. If there is a question of meaning, the guaranty is construed against the party who drew it up or against the party benefited." Matsushita Elec. Corp. of Am. v. Salopek, 57 Wn. App. 242, 246-47, 787 P.2d 963 (1990).

Interpretation and construction of a guarantee is governed by the same rules that apply to contracts. Bellevue Square Managers v. Granberg, 2 Wn. App. 760, 766, 469 P.2d 969 (1970); see also Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 699, 952 P.2d 590 (1998) (rules of contract formation apply to guarantees). Interpretation of a contract is a question of law. Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996).

Washington follows the objective manifestation of contracts theory, and our primary goal in interpreting a contract is to ascertain the parties' intent. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). We determine intent by focusing on the objective manifestation of the parties in the written contract rather than the unexpressed subjective intent of either party. Hearst, 154 Wn.2d at 503. "We do not interpret what was intended to be written but what was

6

written." Hearst, 154 Wn.2d at 504 (citing J. W. Seavey Hop Corp. v. Pollock, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

Extrinsic evidence and surrounding circumstances may only be used to "give[] meaning to words used in the contract." Hollis v. Garwall, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999). Extrinsic evidence may not be used to "show an intention independent of the instrument" or to "vary, contradict or modify the written word." Hollis, 137 Wn.2d at 695.

SSSC contends the evidence establishes the objective mutual intent that Stilnovich would enter into a personal guarantee with SSSC to pay $150,000 of the amount owed by Samish. SSSC claims the fact that the guarantee names only Fox Business Systems is a scrivener's error subject to reformation and SSSC is entitled to judgment as a matter of law.

There is no dispute that the business application and the personal guarantee is with Fox Business Systems and does not mention SSSC. The heading of the Business Credit Application identifies Fox Business Systems located at 531 Fort Riley Boulevard in Manhattan, Kansas. The Individual Personal Guarantee states, in pertinent part:

> I, (name) Robert E. Stilnovich . . . for and in consideration of your extending credit at my request to (company) Samish . . . hereby personally guarantee to you the payment at Fox Business Systems in the state of Kansas any obligation of the Company and I hereby agree to bind myself to pay you on demand any sum which may become due to you by the Company whenever the Company shall fail to pay the same. It is understood that this guarantee shall be a continuing and irrevocable guarantee and indemnity for such indebtedness of the Company.

"It is well settled that a court in equity may reform a contract to correct a scrivener's error." Reynolds v. Farmers Ins. Co. of Wash., 90 Wn. App. 880, 885, 960 P.2d 432 (1998). "A scrivener's error occurs when the intention of the parties is

7

identical at the time of the transaction but the written agreement errs in expressing that intention." Reynolds, 90 Wn. App. at 885 (citing In re Estate of Harford, 86 Wn. App. 259, 263, 936 P.2d 48 (1997)).

Here, the record establishes that SSSC and Stilnovich did not have the identical intent necessary to reform the personal guarantee to name SSSC instead of Fox Business Systems.

Stilnovich testified that when he received the Fox Business Systems Business Credit Application and Individual Personal Guarantee, he immediately called Whitted. Stilnovich testified Whitted told him that Euler, the company that insured SSSC, needed the Business Credit Application and Individual Personal Guarantee. Stilnovich testified, in pertinent part:

> Q    Where did you get this document from?
> A    Off my fax machine.
> Q    From whom?
> A    I have no idea. I assumed it was sent by [Whitted].
> Q    Do you see where it identifies Fox Business Systems right there?
> A    Yes.
> Q    Who's Fox Business System?
> A    I have no idea.
>
> . . . .
> Q    Do you see any indication that that came from Fox Business?
> A    Only because it says Fox Business Systems on it.
> Q    Okay. But you don't think the fax came from Fox Business, right?
> A    No.
> Q    All right. Did [Whitted] explain to you that Seattle Shrimp was not
> big enough to offer their own credit?
> A    I think it was -- the phraseology used is that Euler needed me to
> sign it so they could -- so Seattle Shrimp would get their insurance.

Stilnovich also testified, "This got faxed to me and said if I did not sign it and -- so their insurance company could, I guess, take me on as a customer, [Whitted] explained

8

it as an insurance." Stilnovich testified, "All I know is it was told [to] me that it was an insurance form that I had to sign so they would release the product."

Whitted testified that he told Stilnovich the guarantee was for Euler. Whitted said that the credit line was insured by Euler and that because the size of Stilnovich's orders was "extending the credit limit that [Euler] provided," Euler needed Stilnovich to sign the personal guarantee. Whitted testified, in pertinent part:

> Q. . . . So you would not have told Samish Island that anybody but Seattle Shrimp was providing the credit, would you?
> A. I wouldn't say that. I probably wouldn't say anything about credit. I would just say that Euler wouldn't insure the amount that he needed to operate a business probably.

Whitted also testified, "I probably would never talk credit. I just said that Euler needs it probably so it could be insured on a higher level."

Whitted testified that when Stilnovich called and asked him about the Business Credit Application and Individual Personal Guarantee, he told Stilnovich it was for Euler.

> Q. [W]hen [Stilnovich] called you to ask you about a document he received, how did you answer his questions about that?
> A. I said it was a guarantee, I believe, so they could extend the credit line.
> Q. So that who could extend the credit line?
> A. I assume it was Euler.
> . . . .
> Q. So it was Seattle Shrimp who wanted the personal guarantee from Stilnovich, right?
> A. I don't know if it was for Seattle Shrimp or for Euler. Again, I'm not in accounting.
> Q. Okay. So when Mr. Stilnovich called you and said what is this document for, what did you tell him?
> A. I said I assume it's for the guarantee for Euler.

9

Because the record does not establish that the personal guarantee to Fox Business Systems contains a mere scrivener's error, we affirm the summary judgment dismissal of SSSC's lawsuit against Stilnovich, his spouse, and their marital community.

WE CONCUR: